**Gary A. SENNER, Plaintiff–Appellant,**

v.

**NORTHCENTRAL TECHNICAL COLLEGE, Defendant– Appellee.**

No. 96–3338.

United States Court of Appeals, Seventh Circuit.

Argued March 4, 1997.

Decided May 13, 1997.

5. The majority correctly notes that the company's records suggest that sixteen companies visited the data room. In addition, the log kept by the Centel employee in charge of the data room suggests that materials were provided to nineteen companies.

Sharon Gisselman (submitted on briefs), Wausau, WI, for Plaintiff–Appellant.

Kevin Wolf, Cari Lynn Hoida, Ruder, Ware & Michler, Wausau, WI, for Defendant–Appellee.

Before CUMMINGS, COFFEY, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

This is a claim of age and gender discrimination. 42 U.S.C. § 2000e (Title VII); 29 U.S.C. § 621 (ADEA). Plaintiff Gary Senner, Ed.D., 54, applied for a job as psychology instructor at defendant Northcentral Technical College ("NTC") in Wausaw, Wisconsin. NTC hired Kathleen Kanz, M.A., 29. Senner sued, charging that NTC manipulated its hiring criteria in order to consider only younger women candidates. The district court granted summary judgment to NTC. We affirm.

## I.

Defendant NTC advertised an opening for an instructor of psychology. A newspaper advertisement indicated that the minimum criteria were a master's degree in psychology, with a sociology minor preferred; it referred interested persons to NTC's Human Resources Office for a complete position announcement and application form. The position announcement added that candidates must be certifiable by the Wisconsin Technical College System, that the master's degree should include a "current knowledge of theory and research issues," and emphasized that the minor in sociology was "highly desirable." The announcement expressed a preference for "[a] strong background in general developmental and adjustment psychology," as well as post-secondary teaching experience. The instructor's basic duties would be to teach freshman and sophomore psychology courses. The announcement indicated that NTC preferred a candidate who had the flexibility "to teach a range of courses[.]" NTC's application form also informed candidates that it was necessary to submit original transcripts of all college, university, or technical school credits.

According to documents which NTC submitted, for every new hire the college makes, the person who will be the immediate supervisor for the new position must develop evaluation rating forms to assess the candidates. Accordingly Tom Kerkes, the "supervisor" equivalent in NTC's General Education Department, had two of NTC's psychology instructors develop rating criteria for applications to the new position, and rate the applicants. The form they developed included eight rating criteria;[1] for

___

1. The eight criteria were (1) Master's degree in psychology; (2) minor in sociology; (3) certifi-

each criterion, the raters assessed a score from one (low) to five (high). According to NTC, the advertisement resulted in forty-eight initial inquiries. Fewer than half of these people (eight male, twelve female) eventually submitted application forms, and three (two male, one female) who submitted applications failed to submit transcripts. Of the six men and eleven women who submitted both an application form and transcripts, seven (three male, four female)[2] failed to meet the minimum requirement of an M.A. in psychology. The documents which the parties submitted contain no further information about one man who submitted both an application and transcripts, but whose application apparently was never assessed by NTC. The remaining nine people (two male, one over forty; seven female, one over forty) received numerical rating evaluations from each of the NTC psychology instructors who assessed the applications. The three candidates who received the highest numerical scores, all women, were shortlisted for an on-campus interview. NTC eventually hired Kathleen Kanz, the candidate who received the highest score. Kanz had a B.A. in psychology and an M.A. in psychological counselling. She had never before held a full-time teaching position, but had taught psychology courses part-time at the college level.

One of the unsuccessful candidates was Gary Senner, who was 54 years old at the time he applied for the job. Senner had an associate's degree in business administration from NTC, a B.S. in social sciences, an M.S.Ed. in Guidance and Counselling, and an Ed.D. with a specialization in psychology. NTC categorized his doctorate as a degree in college teaching with a minor in psychology. Senner had never held a full-time teaching position; after he received his Ed.D., he worked as an employment counsellor and social worker for Marathon County (Wisconsin), while teaching occasionally as an ad-

junct at nearby state universities. Senner believed that he was better qualified than the woman whom NTC hired, and became convinced that he had been discriminated against in the hiring process. He filed suit against NTC in federal district court, claiming gender discrimination under Title VII, 42 U.S.C. § 2000e, and age discrimination under the Age Discrimination in Employment Act. 29 U.S.C. § 621. After discovery, NTC moved for summary judgment. The district court granted the motion, and Senner appeals.

## II.

We review the district court's grant of summary judgment *de novo*, with the record and all reasonable inferences drawn therefrom viewed in the light most favorable to Senner, the non-movant. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir.1997). To succeed on a claim of age or gender discrimination, a plaintiff may meet his burden of proof by establishing intentional discrimination either through direct or circumstantial evidence of discriminatory intent. *Helland v. South Bend Community School Corp.*, 93 F.3d 327, 329 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). Because there was no direct evidence of discrimination, Senner chose to establish intentional discrimination through the now-familiar, indirect burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In order to prevail under the *McDonnell Douglas* approach, Senner must initially establish a *prima facie* case of discrimination by a preponderance of the evidence. *St. Mary's Honor Center v. Hicks,*

able in Wisconsin's Vocational, Technical, and Adult Education ("VTAE") system; (4) appropriate emphasis in educational background; (5) flexibility to teach a range of courses; (6) appropriate teaching experience; (7) application materials clear, appropriate, well-written and free of error; and (8) extraordinary experiences/qualifications.

2. One of NTC's two assessors filled out a rating evaluation form and gave a numerical evaluation to one woman (Linda Ulrich) and one man (William DeBartolo) who did not meet the minimum requirement.

509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). Senner has shown that he is a male over age forty, and that the position for which he applied was filled by a female under age forty. NTC makes a desultory attempt to argue that Senner has not made out a *prima facie* case of discrimination, because he has not shown that he was as qualified as either the woman whom NTC hired, or any of the women who made NTC's shortlist for the position. A plaintiff must show he was qualified for the position he sought, or else he cannot prove injury. *See Gilty v. Village of Oak Park,* 919 F.2d 1247, 1255 (7th Cir.1990). We have no comment on whether NTC might succeed on this argument at trial. But this is an appeal from summary judgment, not trial, and Senner vigorously disputes NTC's contention that Kanz was better qualified than he, insists he was the best qualified candidate, and argues that NTC failed to examine his credentials thoroughly. Since Senner's suitability for the instructorship is certainly material to the case, the dispute over his qualifications precludes summary judgment solely on grounds that Senner has not made out his *prima facie* case.

Assuming, for the purposes of this appeal, that Senner has established a *prima facie* case of discrimination, the burden of production shifts to NTC to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Senner concedes that the numerical evaluation system which NTC developed to screen applications for the psychology position meets NTC's burden on this issue. Accordingly, the burden shifts back to Senner to demonstrate that NTC's stated reason was a mere pretext for discrimination. For the purpose of defeating a summary judgment motion, Senner need only produce evidence from which a rational fact-finder could infer that NTC's proffered reasons were pretextual. *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994).

Senner first suggests that a jury could believe that NTC's screening system was a pretext for discrimination because, according to Senner, NTC has conflicting records about the number of people who applied for the position, categorized several applications as "incomplete" without ever establishing criteria for a "complete" application, and never assigned a numerical rating to some of the evaluation sheets. The latter, according to Senner, could imply that the numerical ratings were simply added as an afterthought, after NTC decided which candidates it really wanted to interview.

The problem with this argument is that, contrary to Senner's contention, there is neither a conflict in NTC's records, nor undisclosed methods for determining whether an application is complete. Both the newspaper advertisements and the Position Announcement directed interested persons to obtain an application from NTC's personnel office. That application clearly stated that applicants must submit original transcripts of all tertiary coursework. NTC's "Position Opening Check–Off Sheet" indicates that forty-eight people inquired about the job. Twenty-nine sent an application or resume. Only seventeen submitted both an application form and original transcripts.[3] Of these seventeen, at least six lacked an M.A. in psychology. Senner, who bears the burden of proof (and, because he knew the names of the rejected applicants, presumably could have contacted them), has submitted no evidence whatsoever that any of these applicants in fact had an M.A. in psychology when NTC claimed they did not, or submitted original transcripts which NTC ignored. Of the remaining ten candidates, NTC gave a complete set of numerical ratings to nine. Senner provided no information about the tenth applicant, who submitted both an application and transcripts but for whom no rating forms, even incomplete ones, were filled out. Because NTC's information about its applicants and the criteria with which it assessed

---

**3.** One of the candidates who failed to submit original transcripts—substituting a self-compiled list of graduate coursework in psychology—was James Gottlieb, who had excellent academic credentials, including a doctorate (Ph.D., though not in psychology). Senner uses NTC's rejection of Gottlieb to bolster his gender discrimination claim, implying that a screening process that ignored Gottlieb's credentials as well as Senner's must be pretextual.

them are wholly consistent to this point, there is nothing that hints of mendacity in NTC's proffered reasons for its screening procedures, *see Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749, nor anything from which a rational jury could conclude that the process by which NTC winnowed the field to nine qualified applicants, which it then rated according to its personnel selection procedures, was a pretext for discrimination.

Consequently, if Senner is to make out his case of discrimination, he must do so based on the field of nine qualified applicants which NTC evaluated. This is a tough row to hoe, especially for Senner's ADEA claim. Seven of the nine were female. Only two of the nine were over forty and, significantly, the only over-forty candidate other than Senner, Mary Jarvis, received the second-highest numerical evaluation, made the short-list of candidates invited for on-campus interviews, and again received the second-highest rating after those interviews. Jarvis had significantly more teaching experience than the woman NTC eventually hired (or Senner himself), but it was all at the secondary level. Senner has produced nothing to suggest that age discrimination provoked NTC's preference for Kanz over Jarvis, and Jarvis' presence among the finalists virtually eliminates Senner's own attempt to proceed on an age discrimination theory.[4]

Senner first notes, correctly, that NTC never explained why it chose to give on-campus interviews only to the three candidates who received the highest numerical ratings. He suggests that the cutoff was arbitrary, with a possibly sinister motive behind it. But NTC's screening procedures strongly imply that not all those qualified would be invited for on-campus interviews. Senner, who again bears the burden of proof, could have attempted to present evidence that NTC short-listed more than three candidates when it filled other instructor positions, or that its short-lists regularly consisted of

three female finalists. He did not. The cutoff-point may have been arbitrary, but there is nothing from which a jury could imply a sinister motive for short-listing only the three candidates with the highest numerical rating, simply because there were other qualified candidates who were not invited.

Senner's most persuasive argument is that the rating criteria were too subjective, and that many of the criteria concern attributes which could better be assessed in a personal interview, rather than gleaned from application forms and transcripts. He particularly complains of the fact that a candidate could receive as many rating points for having "clear, appropriate, well-written and free of error" application materials as for exceptional teaching experience. The result, he argues, is that the assessors could readily manipulate the results. He points out that there is not always an exact correlation between experience as it appears on resumes and transcripts, and the ratings which the assessors gave to individual applicants. Most of all, Senner points to the fact that he alone of the nine rated candidates has a doctorate. That NTC would question the ability of a person with a doctorate to relate to NTC's students, he argues, in not worthy of credence, and thus precludes summary judgment. *See Courtney v. Biosound,* 42 F.3d at 418.

The problem is that these arguments, even when construed most favorably toward Senner, only show that NTC did not give his credentials the emphasis they may have deserved. It may be unfair for instructors at a technical college to think that a colleague with a doctorate is over-qualified to teach their students, but it is hardly proof of gender or age discrimination—and holders of academic doctorates are not a protected class under the discrimination laws. Neither are education majors, and it appears from the evaluation sheets that the assessors discount-

---

4. Senner insists that there were "several qualified older male applicants." The only other male among the final nine, Paul Rabideau, was in his mid-twenties. His only teaching experience was as a substitute high school teacher; he apparently had never taught psychology. Senner also complains that Rabideau was among those

whose applications were deemed incomplete. That is wrong: there is one rating form for Rabideau marked "incomplete," but he eventually received the same two rating sheets that all other candidates who submitted both applications and transcripts received.

ed Senner's educational background because his degrees were in education (B.S., M.S., Ed.D.), instead of arts (B.A., M.A., Ph.D.). Indeed, Senner's claim that he is more qualified than the woman NTC hired goes more to his *prima facie* case. (*See supra.*) Moreover, employers may have subjective preferences—for a fancy, attractive resume over a plain resume in ordinary courier type, for example—as long as they do not express forbidden preferences. Senner has shown, at best, that NTC's evaluation criteria require a subjective judgment; they do not suggest that discriminatory intent affected that judgment. The ratings which NTC gave its pool of nine candidates are "subject to too many alternative explanations to discrimination ... to be considered any better than makeweight evidence of discrimination." *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1398 (7th Cir.1997). Consequently, Senner has failed to present evidence that NTC's reasons for not hiring him were a pretext for age or gender discrimination, sufficient to preclude summary judgment.

■ Two final notes. A recurring problem with Senner's argument is that he conflates disparate treatment and disparate impact analysis. "Disparate treatment" occurs when an employer, with actual discriminatory intent, treats an employee (or applicant) unfavorably because of his gender. *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir.1996). "Disparate impact," on the other hand, does not require intentional discrimination. It occurs "where a specified employment practice, although neutral on its face, has a disproportionally negative effect on members of a legally protected class." *Id.* Senner invokes disparate impact analysis several times to urge that patterns evident in NTC's records—more men's applications being deemed incomplete than women's; only two men making the pool of nine fully evaluated applicants; no men making the short-list of finalists—preclude summary judgment. His claim that NTC violated EEOC guidelines in framing its screening criteria also relies on disparate impact analysis.

■ A single decision by an employer can be an actionable "employment practice" under a disparate impact theory. *Council 31, American Federation of State, County & Municipal Employees v. Ward*, 978 F.2d 373, 378 (7th Cir.1992). Nonetheless, it is apparent from the materials submitted that Senner is not really arguing that NTC has created a neutral practice which has the unintended effect of discriminating against men, and against those over forty. Instead, his theory is that NTC's putatively neutral screening process was a sham used to hide the college's practice of intentionally eliminating or discounting applications from male candidates or candidates over forty, so that it could hire a younger woman, even though she was less qualified. That is a disparate treatment theory, not a disparate impact theory. *Id.* Accordingly, we must hold Senner to the standards of disparate treatment analysis. As already noted, Senner has not provided evidence from which a rational jury could conclude that discriminatory intent probably motivated NTC.

■ Lastly, an undercurrent running throughout Senner's brief is his counsel's unstated conviction that, "If you let me bring this information to a jury, I'm sure I can convince them." An obstacle to this contention is that it equates "reasonable inference" with "speculation:" no men made the final round of interviews, therefore gender discrimination could be inferred. The criteria on the evaluation forms couldn't be answered accurately without an in-person interview; therefore it could be inferred that the rating system was pretextual. Only three candidates were invited for an on-campus interview; therefore it could be inferred that such interviews were cut off at three to exclude Senner, the fifth-rated candidate. It is true that we "apply the summary judgment standard rigorously in employment discrimination cases ... because intent and credibility are crucial issues" for which direct evidence is rarely available. *Wohl v. Spectrum Mfg., Inc.*, 94 F.3d 353, 354 (7th Cir.1996). Indeed, we have recognized that intent is "often though not always" contestable. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d at 1396. A party needs more than a scintilla of evidence, however, to defeat summary judgment. In summary judgment cases, the non-movant

must show "that a discriminatory reason *more likely* motivated [the employer's] decision or that [its] proffered explanations are *unworthy* of credence." *Courtney*, 42 F.3d at 418 (emphasis added); *see also Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410–11 (7th Cir.1997). In the case at bar, Senner has produced no evidence from which it could *reasonably* be inferred that NTC *more likely than not* screened its candidates and decided to hire Kanz rather than Senner because she was a woman or under forty. As a result, the district court's grant of summary judgment was correct.

AFFIRMED.