Frank L. FISHER, Plaintiff–Appellant,

v.

WAYNE DALTON CORPORATION, Frantz Division of Wayne Dalton Corporation, and Frantz Manufacturing Company, Defendants–Appellees.

No. 97–2354.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 1998.

Decided March 24, 1998.

John L. Olson (argued), Schlueter, Ecklund, Olson, Barrett & Mayfield, Rockford, IL, for Plaintiff–Appellant.

Jane M. McFetridge (argued), Brittain, Sledz, Morris & Slovak, Chicago, IL, for Defendants–Appellees.

Before ESCHBACH, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Frank L. Fisher filed a complaint against defendants alleging that he was discriminated against on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.* The district court granted the defendants' motion for summary judgment concluding that Fisher could not establish a prima facie case of discrimination and alternatively, could not show that the defendants' legitimate, non-discriminatory reason for the employment decision was a pretext for discrimination. Fisher appeals. We affirm.

## I.

Fisher began working at Frantz's garage door manufacturing plant in 1949. In May 1994, the Frantz manufacturing division was acquired by Wayne Dalton and became Frantz Division of Wayne Dalton ("Frantz Division"). Fisher retained his position as a production scheduler in the Production Control Department. In May 1995, the Production Control Department had a total of three employees. In addition to Fisher, the department consisted of Peter J. Harms, the manager of the department, and Vicky Matznick, also a production scheduler. For sever-al years prior to May 1995, Frantz and the Frantz Division operated at a significant loss. In response to these financial exigencies, the defendants instituted a reduction in force (RIF) to eliminate 40 positions at the Frantz Division in May 1995.

Management for Wayne Dalton and the Frantz Division met for a week prior to the RIF to determine which positions and employees would be eliminated. The defendants state that the criteria used to make the RIF decisions were based primarily upon the qualifications and skills of the employees, and then seniority. The defendants also ensured that the percentage of workers over the age of 40 was slightly greater after the RIF. Additionally, if employees with seniority had their positions eliminated they were given an opportunity to "bump" a less senior employee from a list of several jobs at Frantz Division.

As a result of the RIF only one position remained in the Production Control Department. This position was titled "manufacturing control analyst" and was a combination of several different positions from the Production Control Department and the Engineering Department. The position was given to Matznick because she was qualified to take on Fisher's duties and also had experience at inputting new part numbers and working on the parts master file/ bill of materials system ("PMF/BOM"). Fisher had some experience with aspects of the PMF/BOM, but had no experience at inputting numbers on the system, while Matznick had received training and had consistently been involved in inputting numbers and working on the PMF/BOM over a period of several years. In fact, James Graham, plant manager for Frantz Division, stated that Matznick now spends 40% of her time working on the PMF/BOM, although the record does not state what amount of that time is spent inputting numbers.

Working on the PMF/BOM is somewhat cumbersome and complicated because it operates on two interconnected computer systems: COPICS and Friedman. These two systems operate together by a programming connection that allows an exchange of information. As the district court noted, an em-

ployee inputs, "through a series of different screens, a set of created part numbers, along with other information about the product and parts to garage doors into the COPICS system which creates the bill of materials." Information is similarly entered into the Friedman system which creates the parts master file. The information contained in these two systems allows the Frantz Division to keep track of what parts are used at the different stages of the manufacturing process, as well as the cost of those parts. This information is pulled up on computers to enable the production schedulers to determine customer needs and parts availability for specific products.

Once Fisher was told that his position had been eliminated as part of the RIF he was given the opportunity to bump a less senior employee from a list of nine different jobs. He took advantage of this opportunity and moved into a laborer position. Due to subsequent physical limitations, Fisher went on disability and later returned to other positions at Frantz Division. On December 15, 1995, he filed a complaint against defendants in the district court alleging that he was discriminated against in violation of the ADEA when Matznick was given the remaining position in the Production Control Department rather than him. At the time of the RIF Matznick was 39 and Fisher was 63. Fisher was laid off on January 19, 1996. The district court granted summary judgment because Fisher could not establish a prima facie case of age discrimination or, even if he could, he was unable to show that the legitimate non-discriminatory reason given for his discharge was pretextual.

## II.

This court reviews a district court's grant of summary judgment de novo. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir.1997); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir.1997). "Summary judgment is appropriate when the record, viewed in a light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Vector–Springfield Properties, Ltd. v.*

*Central Ill. Light Co., Inc.*, 108 F.3d 806, 809 (7th Cir.1997) (citing Fed.R.Civ.P. 56(c)). In order for a party "to avoid summary judgment that party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir.1995). In an employment discrimination case, a claimant must present more than conclusory allegations to defeat a motion for summary judgment. *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir.1996). The mere existence of some alleged factual dispute is insufficient to defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

"A plaintiff can avert summary judgment for the defendant in an employment discrimination case either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue or by establishing a prima facie case under the *McDonnell Douglas* formula." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 940 (7th Cir.) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)), *cert. denied*, —— U.S. ——, 117 S.Ct. 2480, 138 L.Ed.2d 989 (1997). Fisher attempts both methods to avoid summary judgment.

## III.

Fisher claims to have direct evidence of age discrimination. Although after the RIF there remained a slightly increased percentage of workers over 40, Fisher nevertheless argues that defendants discriminated based on age among those who were between the ages of 40 and 70. Fisher asserts that the defendants targeted workers over 60 for termination during the RIF, because five out of the six oldest office workers lost their jobs. This argument is unavailing because, aside from this being a small sample size, Fisher does not provide necessary facts pertaining to qualifications for the jobs remaining. Nor does he even attempt to rule out any "potential explanatory variables" such as the inverse relationship between age and computer familiarity. *Sheehan*, 104 F.3d at

942. Additionally, defendants point out in their brief that two of these individuals were not actually terminated: one, Otto Null, refused the remaining position in his department and the other, Fisher himself, bumped and replaced a less senior employee. Therefore, this circumstantial evidence is insufficient to establish age discrimination.

## IV.

■ As there was no direct evidence of discrimination in this case, the district court properly applied the indirect, burden-shifting approach established in *McDonnell Douglas*. *Helland v. South Bend Community Sch. Corp.*, 93 F.3d 327, 329 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). The *McDonnell Douglas* framework requires a three-part inquiry: (1) the claimant must show by a preponderance of the evidence that a prima facie case of unlawful discrimination exists; (2) the defendant then has to articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) the claimant must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1290 (7th Cir.1997).

■ In an age discrimination, reduction in force context, a claimant meets the burden of establishing a prima facie case if he demonstrates that he: (1) is in the protected class of 40 or older; (2) was performing to the employer's legitimate expectations; (3) was subject to an adverse employment action; and (4) that similarly situated and substantially younger employees were treated more favorably. *Chiaramonte v. Fashion Bed Group, Inc., a Div. of Leggett & Platt, Inc.*, 129 F.3d 391, 398 (7th Cir.1997); *see Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 676 n. 1 (7th Cir.1997) (citing *Hartley v. Wisconsin Bell Inc.*, 124 F.3d 887, 892 (7th Cir.1997)). "'Substantially younger'

means at least a ten-year age difference; any age disparity less than ten years is 'presumptively insubstantial.'" *Kariotis*, 131 F.3d at 676 n. 1. However, "[i]n cases where the disparity is less, the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant." *Hartley*, 124 F.3d at 893.

■ The defendants do not dispute that the first three elements of the prima facie case are met by Fisher. At the time of the RIF, Fisher was 63, meeting defendants' expectations in the performance of his job, and had his position eliminated. Therefore only the fourth factor remains at issue. Although Matznick is obviously more than ten years younger than Fisher, they are not similarly situated employees because in addition to their common qualifications as production schedulers, Matznick also has extensive experience in inputting information into the PMF/BOM.

Fisher argues that the defendants purposefully prevented him from meeting the similarly situated requirement by having him train Matznick the week prior to the RIF.[1] Fisher argues that the defendants could have just as easily had Matznick train him on the PMF/BOM during the week, thereby making him more suitable for the consolidated position created as a result of the RIF. However, a comparison of Fisher and Matznick reveals that Fisher lacked qualifications that Matznick possessed.

Matznick and Fisher held the same position, production scheduler, and the main distinction in their production planning responsibilities was that they did planning for different departments. Fisher had more seniority, handled the more complicated scheduling, and worked on what was probably the company's most important product line, the steel door line. The training that Matznick received from Fisher the week prior to the RIF related to the differences

1. The defendants state that Harms did not have knowledge of the RIF until it happened, and therefore could not have been motivated by the pending retention of Matznick and elimination of Fisher's position when he instructed Fisher to train her a week prior to the RIF. The defendants cite to a page in Harms' Deposition that is not contained in the record to support this assertion. Additionally, Harms' Deposition indicates, although not clearly, that he knew of some of the impending RIF changes prior to their implementation.

in the departments for which they planned. Matznick, unlike Fisher, also had received training on inputting into and working on the PMF/BOM over an extended period. It is the distinction in PMF/BOM experience and not the one week of training prior to the RIF which results in Fisher not being considered a similarly situated employee to Matznick.

Fisher's statement that he could have been sufficiently trained in one week is nothing more than a conclusory allegation or speculation that does not defeat a motion for summary judgment. *Mills*, 83 F.3d at 840. In an attempt to support his assertion, Fisher cites to the statement in Harms' deposition that Fisher would be able to work on the parts master file without supervision after a couple of days of training. However, Harms admitted that he had no experience with inputting information into the PMF/BOM and that if Fisher had any "it was very minor and very brief." Harms also stated that Fisher could "never" become as proficient as Matznick at inputting on the parts master file because he lacked her speed, efficiency, and accuracy. This belief was echoed and further supported by the depositions of Matznick and Mindy Smith, who trained Matznick on the parts master file. Matznick stated that it took her three weeks of working with Smith to be trained on the parts master file and less than a year to become proficient on the system. Matznick also estimated that it would take Fisher three to four months to learn the system and that he would not be able to become proficient. Smith stated that it was six months before Matznick was able to work on the parts master file without any supervision. Therefore, the record does not support Fisher's assertion that he would have been as qualified as Matznick for the post-RIF position if he had been trained on the parts master file system for one week.[2]

Fisher fails to raise a genuine issue of material fact that he could satisfy the prima facie case requirement that a similarly situated employee received more favorable treatment. The district court granted summary judgment on this ground, as well as on Fisher's inability to show pretext. Although we agree with the district court that Fisher has failed to show pretext, this court need not proceed any further in the *McDonnell Douglas* analysis once we determine that a claimant has failed to make a prima facie case. *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178 (7th Cir.1997); *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1147 (7th Cir.1997).

## V.

Because Fisher did not present direct or circumstantial evidence of age discrimination, nor did he raise a genuine issue of material fact that would enable him to establish a prima facie case, we affirm the judgment of the district court.

AFFIRMED.

---

**2.** Fisher objects to the use and interpretation of a report prepared by Ronald Gehrig, his vocational expert in a separate worker's compensation case. The vocational expert determined that Fisher did not have a good familiarity with computers. The district court mentioned this report in its opinion on page 1139. As this report is not needed for this court to decide this case we need not determine whether this report should be considered.