**Linda L. PEREZ, Plaintiff,**

v.

**COLWELL SYSTEMS, DIVISION OF DELUXE CORPORATION, Defendant.**

No. 96–2262.

United States District Court, C.D. Illinois, Urbana Division.

Oct. 22, 1999.

Matthew S. Hendricks, Lonnie Renda, Johnson Frank Frederick & Walsh, Urbana, IL, Traci E. Nally, Deborah Frank Feinen, Nally Haasis & Bauer, Champaign, IL, for Linda L Perez, Plaintiff.

Richard P. Klaus, Heyl Royster Voelker & Allen, Urbana, IL, for Colwell Systems, Division of Deluxe Corporation, Defendant.

### ORDER

BERNTHAL, United States Magistrate Judge.

In November 1996, Plaintiff, Linda L. Perez, filed a Complaint (# 1) against Defendant, Colwell Systems (hereinafter "Colwell"), alleging that Colwell had discriminated against her on the basis of age, in violation of the Age Discrimination in Employment Act (hereinafter "ADEA") (29 U.S.C. §§ 621–634) and the Equal Pay Act of 1963 (29 U.S.C. § 206(d)). In September 1999, Plaintiff filed a First Amended Complaint (# 49), alleging only that Colwell discriminated against her based on the ADEA. In September 1999, Defendant filed a Motion for Summary Judgment (# 45). After reviewing the pleadings and record, this Court **GRANTS** Defendant's motion.

### I. Background

Colwell is a division of Deluxe Corporation with branch facilities in Champaign, Illinois, Shoreview, Minnesota, and Colorado Springs, Colorado. The Minnesota and Colorado facilities print checks and business forms and the Champaign facility produces health care forms. (Sweeney Dep., pp. 6, 116.) Plaintiff was employed at the Champaign facility.

In late 1994 and 1995, Colwell planned and instituted a major restructuring (called the Customer Fulfillment System or CFS initiative) to change the organizational structure and business systems of the call centers in Colorado, Minnesota, and Champaign. (Sweeney Dep., pp. 7–8, Rawson Dep., p. 26.) The new technology was originally scheduled to be implemented in April 1995 at the Champaign facility. (Azman Dep., p. 42.)

In late 1994, Mike Rawson, the customer satisfaction manager at the Minnesota facility, hired Laura Sapp for the new position of customer satisfaction coordinator at the Champaign facility. (Rawson Dep., p. 34.) He followed the same procedure that he had used to hire employees in the other facilities. (Rawson Dep., p. 35.) Sapp worked for him in his department but remained at the Champaign facility. (Rawson Dep., p. 38.) The customer satisfaction coordinator's job was to develop strategies that would help Colwell improve its interactions with customers. (Rawson Dep., pp. 36–37.) While working as customer satisfaction coordinator, Sapp also performed tasks that were outside her normal job description. (Rawson Dep., p. 37.) For example, she performed the duties of Gayle Bauer, one of the managers, while Bauer was on maternity leave.

Prior to the reorganization, Larry Sweeney managed the Order Processing & Graphic Design division at the Champaign facility, which consisted of six to seven department managers and approximately 75–100 employees. Jack Schlickting managed Champaign's Sales division, which consisted of seven to eight department managers and approximately 90–100 employees. These two divisions were involved in processing orders. In the Sales division, employees in the telesales department looked up information for customers

who phoned in; they then created a handwritten order form. That form was sent to the Order Processing & Graphic Design division where it was processed by a data entry group (the OEP department). (Rawson Dep., p. 19.) Plaintiff managed the Champaign OEP department from September 1994 to April 1995.

The CFS initiative involved changing this procedure for handling sales to customers based on a new computer system and organization that would allow one person to perform both telephone sales/customer service and order processing. (Rawson Dep., p. 16). With the assistance of new technology, an employee would be able to talk to a customer on the telephone and enter data directly into the computer at the time of the telephone conversation. (Rawson Dep., p. 19.) The planned reorganization affected both the OEP department and the telesales department by consolidating them into a customer service division, called the Customer Management Center (hereinafter CMC), which Sweeney was selected to Manage. (Nice Dep., p. 8, Sweeney Dep., p. 8.) As a result of the planned reorganization, order processing would no longer exist as a separate department; it would be merged with telesales and the new technology would perform the order processing. (Azman Dep., p. 107.)

The changes in technology and organizational structure created new job requirements and needs that effectively reduced the number of available jobs. (Rawson Dep., p. 26.) Telesales skills were considered more valuable than order processing skills after the reorganization. (Sweeney Dep., pp. 34–35.) Based on estimates of the new technology's effect, Colwell undertook a reduction in force (hereinafter RIF), intending to decrease the number of employees from a total of 13 managers and 165–200 employees in the former telesales and order processing areas to seven team leaders and 75–100 employees in the newly created CMC. Colwell started the RIF with the managers in telesales and order processing. (Nice Dep., p. 13.) The 13 managers were informed that their jobs had been eliminated and they all had an opportunity to apply for the team leader positions. (Nice Dep., pp. 16–17.)

The new team leaders were selected from the 13 employees who had previously worked as managers in the two former divisions. In January 1995, seven of the 13 former managers were rehired to be team leaders in the CMC and one was hired in the (separate) Sales Development & Training division. The five managers not rehired as team leaders included Plaintiff, Lucy Stauffer, Wilma Woodrum, June Brooks, and Carol Wagner. Sweeney told these five employees that their employment would be terminated in April 1995 unless they were hired by another department. (Ex. E, # 6–7.) Of this group, Brooks and Wagner subsequently found positions as department managers in another part of the company. (Nice Dep., Ex. G, # 5.)

In January 1995, when Sweeney told Plaintiff that she had not been hired as a team leader, he asked her to train the new "team leader" to manage OEP. Plaintiff then trained Sapp to handle her duties. Sapp was never a team leader; she continued to hold the position of customer service coordinator in Rawson's department, and she continued to report to him in that capacity.

Plaintiff did not obtain another job in the company and her employment ended in April 1995. Her notice of employee separation states that her employment was terminated because her job was eliminated. In September 1995, she filed a formal complaint with the Illinois Department of Human Rights. In August 1996, the Equal Employment Opportunity Commission (hereinafter EEOC) sent her a Notice of Right To Sue. Plaintiff filed a Complaint (# 1) in the district court in November 1996. She filed a First Amended Complaint (# 49) in September 1999.

Following discovery, Defendant filed a Motion for Summary Judgment (# 45) in

September 1999, supplemented by Defendant's Statement of Undisputed Facts (# 46). In October 1999, Plaintiff filed her Memorandum in Opposition to Defendant's Motion for Summary Judgment (# 52). In October 1999, Defendant filed a Reply Memorandum (# 58).

## II. Discussion

Colwell argues that the Court should grant summary judgment because Plaintiff has failed to establish a *prima facie* case of employment discrimination. Furthermore, even if Plaintiff established a *prima facie* case of age discrimination, she has failed to show that Colwell's proffered reason for her discharge was pretextual.

### A. Standard of Review

The Court grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Id.* 477 U.S. 317, 106 S.Ct. at 2552–53. The party opposing the motion must then make a showing sufficient to demonstrate the existence of a material issue for trial. *Id.*

The Court applies this standard with particular care in employment discrimination cases, where intent and credibility are critical. *Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir.1997). Nevertheless, a "party needs more than a scintilla of evidence . . . to defeat summary judgment." *Id.* In an age discrimination case, a claimant must present more than conclusory allegations to defeat a motion for summary judgment. *Fisher v. Wayne Dalton* Corp., 139 F.3d 1137, 1140 (7th Cir.1998). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphy-

sical doubt as to the material facts is sufficient to defeat a motion for summary judgment. *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1121 (7th Cir.1998). "An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Under the ADEA, it is unlawful for an employer to discriminate against an employee because of age. An ADEA claimant may prove age discrimination by presenting direct or indirect evidence. In this case, Plaintiff concedes she has no direct evidence of age discrimination. Instead, she relies on the indirect burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The McDonnell Douglas framework has a three-step inquiry. First, a plaintiff must establish, by a preponderance of the evidence, a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, a presumption of discrimination arises, and the burden shifts to the defendant to present evidence of a legitimate, nondiscriminatory reason for discharging the plaintiff. Once the defendant articulates a nondiscriminatory reason for its action, the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely a pretext for discrimination. *Testerman v. EDS Technical Products Corp.*, 98 F.3d 297, 302–03 (7th Cir. 1996).

### B. The Prima Facie Case

Defendant first argues that Plaintiff has failed to establish a *prima facie* case of age discrimination. A plaintiff meets her burden of establishing a *prima facie* case of age discrimination if she demonstrates that (1) she is a member of the protected age group; (2) her performance met the employer's legitimate expectations; (3) she was subject to an adverse employment action; and (4) she was replaced by a substantially younger employee. *Gadsby v. Norwalk Furniture*

*Corp.*, 71 F.3d 1324, 1331–1332 (7th Cir. 1995); *see also Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir.1993) (the plaintiff stated a *prima facie* case because he was over forty years old, performed well at his job, and was fired and replaced by a younger person). Sapp was more than 10 years younger than Plaintiff, thus she was substantially younger than Plaintiff. *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 892–893 (7th Cir.1997) (a 10 year difference in ages between the plaintiff and her replacement is presumptively "substantial").

Defendant does not dispute that Plaintiff established the first three elements of the *prima facie* case. At the time of the RIF, Plaintiff was 52, meeting Colwell's performance expectations, and she was discharged. Only the fourth element remains at issue. Plaintiff contends that she established the fourth element because Sapp replaced her as OEP manager.

■ In employment discrimination cases, the word "replace" has a specialized meaning. Shifting and/or consolidating work does not constitute replacement; instead, "[a] person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990). In the context of a RIF, spreading the former duties of a discharged employee among the remaining employees does not constitute replacement. *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir.1992). In *Lilley*, after the plaintiff was discharged, his duties were assigned to the company's remaining staff, but no additional employees were hired. The Sixth Circuit determined that the plaintiff had not been replaced.

Noting that the *Lilley* employer's workforce was shrinking for reasons unrelated to discrimination, the Seventh Circuit distinguished *Lilley* from the facts in *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394 (7th Cir.1997), in which it stated that an employer must not be allowed to circum-

vent the McDonnell Douglas formula by fractionating an employee's job. *Id.* at 1397–98; *see Smith v. F.W. Morse & Co.*, 76 F.3d 413, 423 (1st Cir.1996). The court stated that replacement occurs when A is fired, B and C are assigned each to do half the work formerly done by A, *and* D is hired to do the work of B and C that they must give up to do A's work. (Emphasis added.) *Wallace*, 103 F.3d at 1397. In such a situation, even though A's duties have been split among two (or more) employees, A has been effectively replaced. *Id.*

■ In this case, Sapp did not "replace" Plaintiff as OEP manager. The essence of a RIF is that fewer employees are doing the work that has to be done. Here, Sapp already held the position of customer service coordinator. *In addition to* that job, she was asked to manage the OEP department on a temporary basis after Plaintiff was discharged. Sapp stated in her deposition that she always knew those duties were temporary. (Sapp Dep., pp. 51–52.) Plaintiff presented no evidence to show that Sapp stopped performing her duties as customer satisfaction coordinator or that anyone was hired to perform those duties for her.

Plaintiff's reliance on *Janiuk v. TCG/ Trump Company*, 157 F.3d 504 (7th Cir. 1998), is misplaced. In *Janiuk,* an organization chart developed after a RIF indicated that the plaintiff's position still existed and that a younger employee had assumed that position. Thus, the evidence created a question of fact as to whether the plaintiff had been replaced. *Id.* at 508–09. In this case, however, the evidence clearly shows that all the manager positions in telesales and order processing were eliminated in January 1995 when the team leaders were hired. Moreover, the reorganization plan eliminated the OEP department.

Plaintiff presents evidence that the OEP department had not been eliminated by April 1995 as originally scheduled. As a result, someone was needed to manage

order processing after Plaintiff's employment was terminated and Sapp was asked to do that in addition to her own job. Nevertheless, the evidence that the OEP department still existed when Plaintiff was discharged does not raise a fact issue as to whether she was replaced. Accordingly, Plaintiff has not established a *prima facie* case based on replacement.

■ The *prima facie* case, however, is a flexible standard that "is not intended to be rigidly applied." *Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567 (11th Cir.1992). The exact content of the fourth element may vary from case to case to take differing situations into account. RIF cases present such a situation. *Gadsby*, 71 F.3d at 1331–32. A RIF is characterized by elimination of employees, not replacement. In the context of a RIF, that fourth element of a *prima facie* case of age discrimination is that the employer treated similarly situated younger employees more favorably. *Fisher*, 139 F.3d at 1141.

When order processing and telesales were consolidated to create the CMC, the 13 current managers in those divisions, including Plaintiff, competed for seven new "team leader" positions. These managers were undeniably "similarly situated" to Plaintiff; however, she does not argue that younger employees in this group of managers were treated more favorably. (In fact, four of the seven employees who were selected for the team leader positions were in the protected group.) (Sweeney Dep., p. 131.) Although she contends that no clear criteria existed for the team leader jobs and the company did not follow the system for applying for openings, she presents no evidence that the selection process was anything other than age-neutral in content and application. *See Allard v. Indiana Bell Telephone Co.*, 1 F.Supp.2d 898, 921 (S.D.Ind.1998), cited favorably in *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 395 (7th Cir.1998) (If the Court is satisfied that the selection process is age-neutral in content

and application, then a plaintiff will find it more difficult to present enough evidence to create a genuine issue of material fact about the motivation behind her individual selection for termination.).

■ As an alternative to her theory that Sapp replaced Plaintiff, Plaintiff apparently offers Sapp as the "similarly situated younger employee" who was treated more favorably than Plaintiff. Arguably, one employee is insufficient to satisfy the fourth element even under the less stringent RIF *prima facie* case. In *Kuhn v. Ball State University*, 78 F.3d 330 (7th Cir.1996), the plaintiff alleged failure to promote in violation of the ADEA. The Seventh Circuit stated as follows:

A plaintiff who wants a court to infer discrimination from the employer's treatment of comparable cases has to analyze a goodly sample. One is an anecdote, and several cases are several anecdotes. Judges do not find discrimination on such a thin basis.

*Id.* at 332; *see Shank v. Kelly–Springfield Tire Co.*, 128 F.3d 474, 480 (7th Cir.1997) (one example of better treatment is not enough to support an inference of discrimination). Furthermore, Sapp was not similarly situated to Plaintiff. Their positions, backgrounds, and prior job experiences were different. Sapp was employed in another division altogether. Her background was in sales and customer service and she had experience with special projects, while Plaintiff's experience was in human resources and accounting. (Sweeney Dep., p. 91.) Sapp did not have management experience and did not hold a management position until she was promoted from customer service coordinator to department manager in telemarketing and customer fulfillment in December 1996; that promotion did not involve managing the order processing function. (Sapp Dep., pp. 31–32.) Sapp testified that she never felt in danger of losing her job as a result of the reorganization and RIF. Finally, she was not one of the 13 managers in the former telesales and or-

der processing areas and she never competed with Plaintiff for a team leader position. To the extent that Plaintiff contends that Sapp was similarly situated because she replaced Plaintiff as OEP manager, the Court notes again that Sapp did not "replace" Plaintiff as that term is used in discrimination cases.

■ The qualification "similarly situated" is an important element of the *prima facie* case. *Wallace*, 103 F.3d at 1398. The mere fact that a younger employee is retained in a RIF while an older employee is discharged is not enough to create an inference of age discrimination. *Id.* Plaintiff failed to show that Sapp was similarly situated to her. Accordingly, Plaintiff has failed to establish the fourth element even under the less stringent standard in the context of a RIF.

### C. Pretext

Assuming *arguendo* that Plaintiff has established a *prima facie* case of age discrimination, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff. Here, Defendant stated that Plaintiff's position had been eliminated pursuant to a reorganization and reduction in force. Once an employer produces evidence of a nondiscriminatory reason for its action, the employee must then demonstrate that the proffered reason for the decision was not the actual reason and that it was only a pretext for discrimination. *Adreani*, 154 F.3d at 394–95. Colwell contends that Plaintiff failed to show by a preponderance of evidence that its proffered reason for terminating her was pretext.

■ A plaintiff can prove pretext in one of two ways: (1) by showing that a discriminatory reason more likely than not motivated the employer (*i.e.*, that the employer's proffered reason was not the sole determining factor and, therefore, age discrimination might have been a determining factor in addition to the proffered reason); or (2) that the employer's proffered explanation is unworthy of credence. *Konowitz*

*v. Schnadig Corp.*, 965 F.2d 230, 232 (7th Cir.1992). To demonstrate that the employer's "ostensible justification is unworthy of credence," the employee must present evidence tending to prove that the employer's proffered reasons are factually baseless, did not actually motivate the discharge in question, or were insufficient to motivate the discharge. *Testerman*, 98 F.3d at 303.

■ An employee discharged in a RIF does not need to produce evidence tending to prove that the employer's explanation was a "lie" in the sense of being a complete fabrication; instead, he must establish that age tipped the balance in favor of discharge. *Adreani*, 154 F.3d at 395. Because some employees inevitably are discharged in a RIF, a fired employee will succeed in establishing pretext when she provides evidence that would support at least an inference that, regardless of the reasons stated by the employer, her job would not have been terminated "but for" discriminatory reasons. *Testerman*, 98 F.3d at 304.

Plaintiff does not dispute the fact that Colwell went through a RIF and reorganization. She does not attempt to show that Colwell's restructuring and its proposed consolidation of divisions and streamlining of the OEP process constituted a ruse to fire her. Rather, she contends that the reorganization of the Champaign facility was pretextual because (1) the new technology that was the basis of the reorganization would not and did not work at the Champaign facility and Plaintiff's job was never eliminated; (2) Laura Sapp, who performed Plaintiff's job after April 1995, was younger, less qualified, did not have to apply to get the job, and was trained by Plaintiff; and (3) Plaintiff was never seriously considered for any other job because no clear criteria existed for the team manager's job and the company did not follow the system for applying for openings.

Plaintiff first contends that the plan to use a new technology did not work at the

Champaign facility and that Colwell management (in the person of Bob Azman) knew that problems existed in early 1995.

It is undisputed that Sweeney had serious concerns about the feasibility of using the new technology because the Champaign facility used a different computer system and produced different products than the other facilities. He informed Azman and others of those concerns. Azman acknowledged that Sweeney had told him that the Champaign computer system was different from the systems at the other two facilities and had expressed concern about applying the new technology in Champaign facility. (Azman Dep., pp. 44–45.) In spite of those concerns, the company management apparently continued to view all three facilities the same. (Sweeney Dep., p. 76).

The new technology was originally scheduled to be installed in Champaign in April 1995. (Azman Dep., p. 42.) In the meantime, the Minnesota and Colorado facilities had successfully installed and begun using the new technology in their call centers. The installation was delayed at the Champaign facility because Colwell did indeed encounter difficulty in applying it, as Sweeney had predicted. In his deposition, Azman stated that he became aware "that the time period for implementation of the new technology in Champaign would take at least another six months or so." (Azman Dep., p. 108.) Thus, the installation was delayed from its originally scheduled date of April 1995 and Azman and Sweeney both knew that the order processing department would not be eliminated in April 1995 as originally planned.

Because of the delay, the OEP department existed in April 1995 when Plaintiff's employment ended and continued to exist for some months. Order entry processing continued to be done as it had been prior to the reorganization and Sapp absorbed Plaintiff's job responsibilities in addition to performing her own job after Plaintiff's employment was terminated.

 Colwell's delay in installing the new technology and, indeed, its failure ever to install the new technology does not imply age discrimination. To show pretext, a plaintiff is required to establish that the employer did not honestly believe the reasons it gave for terminating her and that age tipped the balance in favor of discharge. *See Adreani*, 154 F.3d at 395; *Pitasi v. Gartner Group*, 184 F.3d 709, 718 (7th Cir.1999). Plaintiff has not provided any evidence tending to show that Colwell did not honestly intend to install the new technology and reorganize the Champaign facility or that it did not honestly believe that the new technology would eventually supplant the former method of processing orders. In fact, Sweeney stated in his deposition that announcements of the technology changes came out in March 1995, and Colwell "went crazy there probably for three or four months trying to work the [new technology]" during the summer of 1995. (Sweeney Dep., p. 119.) Here the record is devoid of evidence that Colwell's articulated reasons for discharging Plaintiff were not honestly held and genuine.

In addition, once it became clear that installation of the new technology would be delayed, it was necessary for someone to manage the OEP department. Plaintiff's position as OEP manager had been eliminated along with all the managers' positions in January 1995 when the team leaders were hired, even though she continued to function as *de facto* manager of the OEP department. When her employment ended in April 1995, Sapp absorbed those managerial functions along with her own job of customer satisfaction coordinator.

Plaintiff does not dispute that Colwell was reducing its work force in concert with the reorganization of its order processing and telesales functions. Reductions in force are cost-cutting measures in which "someone has to go." *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 572–73 (7th Cir.1998). In this case, 13 managerial positions (including Plaintiff's position) in two divisions were eliminated; they were re-

placed by seven "team leaders" in the CMC. Plaintiff was not selected as one of the team leaders; therefore, she was discharged.

The essence of a RIF is that fewer employees are doing the work that has to be done. Sapp's assumption of Plaintiff's duties in addition to her own job is consistent with a RIF. That is not to say that a RIF automatically insulates an employer from challenges of age discrimination. Clearly, discriminatory changes may occur in the context of an overall reduction in force. *See Samuelson v. Durkee*, 760 F.Supp. 729, 736 (N.D.Ind.1991), *aff'd*, 976 F.2d 1111 (7th Cir.1992). Nevertheless, Plaintiff must raise at least an inference that the employer would not have discharged her "but for" her age. *Testerman, 98 F.3d at 304*. The mere fact that a younger employee is retained in a RIF while an older employee is discharged is not enough to create an inference of age discrimination. *Wallace*, 103 F.3d at 1398. Thus, the fact that Sapp managed the OEP department on a temporary basis does not imply that Colwell discriminated against Plaintiff on the basis of age. A plaintiff must do more to survive summary judgment than show that she was discharged in a RIF while substantially younger employees were retained. *Id.* Here, Plaintiff has failed to do that.

■ Because Azman and Sweeney knew that the OEP department would continue to exist after April 1995, Plaintiff contends that they should have reinstated Plaintiff's position and rehired Plaintiff to fill that position. Sweeney stated that they considered doing that and decided against it. Instead, the company moved forward with its efforts to install the new technology. Decision-making by an employer—even if it exhibits poor business judgment—is not sufficient to establish pretext. *See Pitasi,* 184 F.3d at 718. The Court cannot infer age discrimination from Colwell's decision.

In this case, Plaintiff's position was eliminated pursuant to a *bona fide* reorga-

nization and RIF. Plaintiff presented no evidence that her position was ever reinstated. The failure of the technology to work at the Champaign facility does not create an inference that the Plaintiff was discharged because of her age. *See Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1123 (7th Cir.1998) (to survive summary judgment, a plaintiff must provide evidence of at least an inference that the real reason for his dismissal was discriminatory). Plaintiff has failed to present a genuine issue of material fact regarding whether Colwell honestly believed in its articulated reason for discharging her.

Finally, Plaintiff apparently contends that the hiring and job transfer procedures used in the reorganization imply age discrimination. Specifically, she states that she was never seriously considered for any other job because no clear criteria existed for the team manager's job and the company did not follow the system for applying for openings.

■ Unfortunately for Plaintiff, even if this evidence showed that Colwell did not know how to conduct a reliable selection process, these flaws do not even hint at age bias. The absence of written criteria for the selection process, without more, does not constitute evidence of age discrimination. ADEA does not protect older employees from erroneous or even arbitrary personnel decisions, only from decisions that are unlawfully motivated. *Kralman v. Illinois Department of Veterans' Affairs*, 23 F.3d 150, 157 (7th Cir.), *cert. denied*, 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994) (quoting *Bienkowski v. American Airlines*, 851 F.2d 1503, 1508 (5th Cir.1988)); *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 515 (7th Cir.1996) (arbitrariness alone does not constitute discrimination; the subjective nature of a selection process is not sufficient to demonstrate that age bias more likely motivated an employer's decision to terminate an employee); *See also Kariotis v. Navistar International Transportation Corp.*, 131

F.3d 672, 677 (7th Cir.1997) (finding that plaintiff's "energy is misspent by attacking the company's decisional process, unless she can point to facts suggesting that the company investigated her differently because she was an older employee").

In *Diettrich v. Northwest Airlines, Inc.,* 168 F.3d 961, 965–966 (1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 48, 145 L.Ed.2d 43 (1999), the plaintiff argued that the interview process was administered unfairly and to his detriment. He pointed to evidence that the company never trained the decision maker to conduct interviews, that the decision maker abandoned the format set forth in the company's interview guide in favor of a more variable approach, that he asked the plaintiff different and "more difficult" questions than he did the other candidates, that the plaintiff's interview was shorter than other interviews, and that the decision maker disregarded the plaintiff's resume and cover letter and did not otherwise elicit information regarding his extensive work history and experience in sales. *Id.* The Seventh Circuit stated as follows:

> For all we know, Hinckley [(the decision maker)] was not impressed with Diettrich [(the plaintiff)] for any one of a myriad of other, non-actionable reasons. For example, Hinckley may have decided that Diettrich was wrong for the job because Hinckley disliked the clothes Diettrich wore to the interview or he found Diettrich's conversation boring. If this were the case (and there is no evidence to suggest that it is), we might question the good sense of Northwest's hiring decisions, but we could not hold Northwest liable for discrimination. To prevail, Diettrich must provide evidence not only that he was treated differently, but that he was treated differently because of his age. This he never did.

*Id.; see Richter v. Hook–SupeRx, Inc.,* 142 F.3d 1024, 1031–32 (7th Cir.1998). Similarly, in this case, Plaintiff's evidence regarding the hiring and transfer procedures does not imply age discrimination.

## III. Conclusion

Plaintiff's claim of age discrimination is based primarily on the fact that Sapp "took her job." However, Sapp merely absorbed Plaintiff's tasks temporarily in addition to her own job; she did not replace Plaintiff. Moreover, Sapp was not similarly situated to Plaintiff in terms of job experience or qualifications. Thus, Plaintiff has failed to establish a *prima facie* case of employment discrimination under the ADEA. Furthermore, even assuming that Plaintiff established a *prima facie* case, Colwell rebutted the presumption of discrimination by showing that Plaintiff's position was eliminated as part of Colwell's reorganization and RIF. Neither the fact that Sapp absorbed her duties nor Colwell's lack of success in installing the new technology at the Champaign facility creates an inference that the reorganization and RIF were pretext. Thus, Plaintiff did not meet her burden of proof.

Summary judgment is proper where no genuine issue of material fact exists. Fed. R.Civ.P. 56. Here, Plaintiff has not raised any genuine issues of material fact on the issue of whether age "tipped the balance" in favor of her discharge. *See Testerman,* 98 F.3d at 303. She has presented no direct evidence of discriminatory motive and she failed to produce sufficient evidence to justify the inference of discrimination permitted by the McDonnell Douglas method of indirect proof. Accordingly, the Court grants Defendant's Motion for Summary Judgment (# 45).

### Summary

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment (# 45). The Court's decision **MOOTS** all other pending motions at this time, including Defendant's Motion To Strike (# 55), Defendant's Motion To Amend Exhibit H to Include En-

tire Document (# 56), and Plaintiff's Motions in Limine (# 60).