**Paul J. HOFFMAN, Plaintiff–Appellant,**

v.

**MCA, INC., Defendant–Appellee.**

**No. 97–3199.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1998.

Decided June 5, 1998.

Kathleen R. Pasulka, Chapman & Cutler, Paul K. Vickrey (argued), Niro, Scavone, Haller & Niro, Chicago, IL, for Plaintiff–Appellant.

Bonita L. Stone (argued), Julie L. Helenbrook, Katten, Muchin & Zavis, Chicago, IL, for Defendant–Appellee.

Before BAUER, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Paul Hoffman worked for seventeen years at MCA, Inc. In 1994, MCA fired him. He brought this suit alleging that he was fired because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The district court granted summary judgment to MCA. We affirm.

### I. HISTORY

MCA is a syndicator that sells television programming to television stations around the country. In 1977, MCA hired Hoffman as a sales representative in its Chicago office. Hoffman was not an at-will employee—he worked under a series of contracts until MCA fired him in 1994. When he was fired he was 54 years old, the oldest sales representative, and the only one over 50. He was also a top revenue producer and MCA's highest paid sales representative. His title was Vice President/Midwest Regional Manager.

In 1988, Hoffman began reporting to James Kraus, who is twelve years younger than he. Kraus was the Executive Vice President/Director of Sales and Marketing. Kraus reported directly to MCA President Shelly Schwab. Hoffman and Kraus intermittently had disagreements until Hoffman was fired in 1994.

The bulk of these disagreements took place in 1991, which was around the time when MCA was considering whether to renew Hoffman's contract. One such disagreement occurred because Kraus learned that Hoffman had given "permission" for another sales representative to interview with a competitor despite that sales representative's contractual obligation to continue working for MCA. Kraus documented the incident in a "confidential" memorandum to Schwab, meaning he did not place the memorandum in Hoffman's personnel file as was the common practice at MCA. Hoffman denies that he gave permission for the sales representative to interview with the competitor.

Kraus considered that he and Hoffman did not have a good business relationship. In

1991, he wrote Hoffman a memorandum outlining his general expectations, including in particular a desire for better communication between the two. A few weeks later, however, because of Hoffman's failure to communicate his plans adequately, Kraus accused Hoffman of being "AWOL." Dep. of James Michael Kraus at 96, *Hoffman v. MCA, Inc.,* 974 F.Supp. 1149 (N.D.Ill.1997). It was routine for Hoffman to travel to make sales calls, but Kraus claims he did not know where Hoffman was for a few days. Kraus documented the incident in another confidential memorandum to Schwab. Hoffman claims that he told Kraus he would be away and that Kraus's secretary's telephone log documented a telephone call from Hoffman while he was on the road.

Hoffman appeared to have problems with other MCA employees as well. Hoffman had supervisory authority over Kristine Orr, a newer sales representative. Orr performed poorly, possibly indicating that she was receiving inadequate training and supervision. She complained to Kraus that Hoffman was making her life a "living hell." Kraus Dep. at 2. MCA removed her from Hoffman's supervision and put her under the supervision of a Vice President in the New York office. Kraus documented the problems that led to the decision to place Orr under someone else's supervision, but Hoffman says he was never told to change his behavior toward Orr.

Hoffman believes that Kraus disliked him because of his age. Hoffman recalls several age-related statements that Kraus made in 1991. First, Hoffman says that he recalls Kraus calling another sales representative an "old-fashioned hack salesman," Hoffman Dep. at 203, adding that Kraus "would like to get him out of there," *id.* at 204. Hoffman also says that after he complained one day that his back was bothering him, Kraus responded that "you're just getting old." *Id.* at 219. In a similar incident, Hoffman declared he was having trouble reading a menu. Kraus responded, "Paul, you're getting old." *Id.* at 222.

The conflict between Kraus and Hoffman seems to have lain dormant until 1993. Then, Kraus received a complaint from a station manager about Hoffman. The station manager said he was unable to develop a good relationship with Hoffman because of his negative, sarcastic, and insulting attitude. Hoffman does not deny that the station manager made the complaint; however, he says MCA never informed him about it. Kraus documented the complaint in a confidential memorandum to Schwab.

In 1994, Kraus received another complaint about Hoffman, this time from a representative of WLS–TV in Chicago. She complained that Hoffman was insulting and unprofessional over the telephone, and she requested a different sales representative to service their account. Hoffman knew about the complaint; he called WLS to apologize.

Also in 1994, Hoffman attended a sales conference along with Kraus and Schwab. At the end of each day of the conference, Schwab asked each sales representative what he or she had done that day to generate sales leads. Schwab and Kraus say that Hoffman refused to participate in the spirit of the meeting, giving only negative or incomplete answers. Hoffman says he was trying; he simply had no leads to report.

Hoffman recalls a couple age-related comments made around this time. At a business dinner, Kraus said to Hoffman, "Paul, you're just getting old," *id.* at 263–64, and asked when Hoffman might retire. Later that year, Kraus and Hoffman were at a business dinner when Hoffman remarked that he needed new glasses. Kraus said, "Hey, you're just getting old." *Id.* at 267. As the two were walking in the parking lot after dinner, Kraus said, "I think we're going to have to get fresh legs in Chicago." *Id.*

The story reaches a crescendo at a June 1994 sales meeting. At the end of the meeting, Schwab asked, "Do any of you have any ideas that will help sell our product?" Hoffman's Resp. to MCA's Local Rule 12(M) Statement Exh. H. Hoffman answered, "Does management feel we are doing a good job covering the various broadcast groups?" *Id.* Kraus immediately retorted, "That's an indictment of management." Hoffman Dep. at 403. Schwab later agreed with Kraus that he interpreted the statement to be a criticism of management. Hoffman understood that he had offended Schwab; he wrote Schwab a letter acknowledging that his question had

prompted "some animosity towards me." Decl. of Shelly Schwab at 4. Hoffman invited Schwab to contact him to discuss the matter further. Kraus sent Schwab a memorandum describing his own reaction to Hoffman's question.

A month later, Schwab decided to fire Hoffman "[b]ased on Hoffman's conduct at the June, 1994, sales meeting, which was the culmination of Hoffman's on-going problem with disruptive behavior." *Id.* at 4. Schwab sent Kraus to tell Hoffman that he need not continue to perform under his contract. MCA immediately replaced Hoffman with a 37–year–old sales representative from within the company.

Hoffman sued under the ADEA alleging that MCA fired him because of his age. The district court granted MCA's motion for summary judgment. Hoffman appeals.

## II. ANALYSIS

### A. *Standard of Review*

■ We review a district court's decision to grant summary judgment de novo, drawing our own conclusions of law and fact from the record before us. *See Thiele v. Norfolk & W. Ry. Co.*, 68 F.3d 179, 181 (7th Cir.1995). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, neither "the mere existence of *some* alleged factual dispute between the parties," *id.* at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to defeat a motion for summary judgment.

### B. *ADEA Analysis*

Hoffman believes that MCA fired him because of his age in violation of the ADEA, 29 U.S.C. § 621 *et seq.* The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a). Hoffman attempts to prove a violation of the ADEA in two ways—by direct proof and by the well-known *McDonnell Douglas* burden shifting method. We address each in turn.

#### 1. Direct Proof

■ To succeed under the direct proof method, Hoffman must show that age was a determining factor in MCA's decision to fire him. In other words, he must show that but for his age, MCA would not have fired him. *See Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 841 (7th Cir.1996). Sometimes, remarks by an employer can be direct proof of discriminatory intent. But "[r]emarks at work that are based on [age] stereotypes do not inevitably prove that [age] played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her [age] in making its decision." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Although *Price Waterhouse* was a sex discrimination case, we have applied the same requirement to remarks in ADEA cases. *See Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1403 (7th Cir.1996) ("[B]efore seemingly stray workplace remarks will qualify as direct evidence of discrimination, the plaintiff must show that the remarks 'were related to the employment decision in question.'" (quoting *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686–87 (7th Cir. 1991))); *Robinson v. PPG Indus.*, 23 F.3d 1159, 1165–66 (7th Cir.1994).

■ MCA is quick to point out that the comments were made by Kraus, while Schwab actually made the decision to fire Hoffman. Normally the plaintiff must prove that the decision maker uttered the remarks. *See Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 688 (7th Cir.1998) ("When a plaintiff proceeds under the direct proof method, allegedly discriminatory statements are relevant ... only if they are both made by a

decisionmaker and related to the employment decision at issue."); *Willis v. Marion County Auditor's Office*, 118 F.3d 542 (7th Cir.1997). But if a plaintiff can show that the attitudes of the person who made the remarks tainted the decision maker's judgment, the remarks can be relevant to prove discrimination. *See Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir.1990) (Unbiased decision maker's decision tainted by age-biased committee's recommendation.); *cf. Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 396 (7th Cir.1997) (not imputing inculpatory statements of others to decision maker absent evidence that these other employees had any influence over decision maker); *Willis*, 118 F.3d at 546–47 (While supervisor may have harbored age animus, there was no evidence that the decision maker personally harbored age animus or was tainted by supervisor's attitudes.). Hoffman has put forth evidence both that Kraus was his supervisor and that Kraus wrote a series of memoranda to Schwab about Hoffman's performance. Because this case is before us on summary judgment, we assume that any discriminatory intent on Kraus's part tainted Schwab's decision, making Kraus's remarks relevant to proving that Schwab's decision was unlawful.

As we described above, Kraus said to Hoffman several times, "you're getting old." Kraus made these comments in casual settings, often after Hoffman complained about some ache or pain. Once Kraus said "you're getting old" after Hoffman was unable to read a menu without his glasses. Even viewing these comments in the light most favorable to Hoffman, we cannot say that the remarks were anything more than a truism. Hoffman was indeed aging, and Kraus responded with the benign and common retort, "you're getting old." Certainly the case would be different if these comments were in response to the question, "why are you reducing my workload?" or "why was X promoted instead of me?" In those cases the comments would be related to an employment decision. What we have here, though, is conversational jabs in a social setting. This is not evidence of intent to fire Hoffman because of his age.

In July 1994, the same month Hoffman was fired, Kraus said to Hoffman, "I think we're going to have to get fresh legs in Chicago." Hoffman Dep. at 267. This line of conversation ended, and Hoffman did not know exactly to what Kraus was referring. The statement is ambiguous as to what kind of person "fresh legs" describes: "fresh" could mean a young person or a person new to Chicago. Since we are reviewing a summary judgment decision, we take the reading most favorable to Hoffman, that "fresh legs" means a young person. However, even taking the statement to mean "we need a young person in Chicago" we cannot say that the statement is linked to the decision to fire Hoffman. Kraus could have been talking about hiring additional personnel, not replacing Hoffman. We do not even know that Kraus was referring to the sales force—he may have been talking about some other position. Simply put, the statement is too vague for us to read it as inculpating MCA. It is not evidence of age discrimination.

Lastly, Hoffman points to a remark that Kraus made in 1990 concerning another sales representative. Kraus referred to this man as an "old-fashioned hack salesman," adding that "I'd like to get him out of here." Hoffman Dep. at 203–04. These statements do not demonstrate Kraus's discriminatory intent to fire Hoffman because of his age. First, they do not even refer to Hoffman—they refer to another sales representative. Second, they do not refer to the sales representative's age—they refer to his style. Hoffman himself explained in his deposition that "old-fashioned hack salesman" means someone who is "out of step with the business, out of sync with it." Hoffman Dep. at 204. The remark is not probative of intent to discriminate against Hoffman based on his age.

Hoffman has not provided other direct evidence of MCA's intent to fire him because of his age. The statements in the record do not relate to the decision to fire Hoffman. At most, they evidence a recognition of his age. Thus, we cannot say that "but for" Hoffman's age, MCA would not have fired him. The district court properly granted summary judgment to MCA under the direct method of proving an ADEA violation.

### 2. *McDonnell Douglas*

Hoffman has also made an attempt at the burden-shifting method of proving age discrimination that we have adapted from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Hoffman must make out a prima facie case of age discrimination by showing that (1) he is within the protected class; (2) he was performing his job to the employer's legitimate expectations; (3) he was discharged; and (4) his employer sought a replacement.[1] *See Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994). If he does so, he has created a rebuttable presumption of discrimination, and the burden shifts to MCA to articulate a nondiscriminatory reason for firing him. *See id.* If MCA does so, the burden shifts back to Hoffman to show that MCA's proffered reason is pretextual. A pretextual reason "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995). If Hoffman shows MCA's proffered reason is pretextual, he "need not also come forward with further evidence of intentional discrimination to survive summary judgment. [His] proof would at that point be sufficient to support an inference that the company's real reason was discriminatory." *Fuka,* 82 F.3d at 1404. If he raises an inference of discrimination he has not won his case. He has merely produced enough evidence to defeat summary judgment and proceed to trial. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Throughout this process, the burden of persuasion to establish discrimination remains always with the plaintiff. *See id.* at 507, 113 S.Ct. 2742.

In the district court there was some disagreement over whether Hoffman made out the second element of the prima facie case, whether he was performing to MCA's legitimate expectations. MCA chose to forego that issue on appeal because "MCA's argument that Hoffman has failed to demonstrate pretext subsumes its argument that Hoffman has failed to show he was meeting MCA's legitimate expectations." Brief for Appellee at 15 n. 2. We assume, because the parties do, that Hoffman made out a prima facie case creating a presumption that MCA fired him because of his age.

MCA asserts on appeal (as it did in the district court) that Schwab fired Hoffman "[b]ased on Hoffman's conduct at the June, 1994, sales meeting, which was the culmination of Hoffman's on-going problem with disruptive behavior." Schwab Decl. at 4. MCA insists that Schwab's statement means he fired Hoffman for his behavior at the sales meeting alone, and it asks throughout its brief that we confine our analysis to the legitimacy of this reason only. It is disingenuous for MCA to characterize the sales meeting as the sole reason for firing Hoffman when MCA repeatedly uses Schwab's wording shown above, which references "Hoffman's on-going problem with disruptive behavior." We interpret Schwab's statement to mean that Hoffman was fired for a history of disruptive behavior that continued until and included his behavior at the sales meeting.

MCA also asks that we confine our analysis to Schwab only, disregarding any evidence about Kraus because Schwab alone made the decision to fire Hoffman. It is true that Schwab alone decided to fire Hoffman, but Kraus's memoranda to Schwab regarding Hoffman and the conversations between Schwab and Kraus that we know about suggest that any age animus on Kraus's part could have tainted Schwab's decision. *See supra* part II.B.1; *see also Shager,* 913 F.2d at 405. Because this case is before us on summary judgment, we assume (as we did in evaluating Hoffman's direct evidence) that any age animus of Kraus's tainted Schwab's decision.

We now turn to MCA's proffered reason, ongoing disruptive behavior culminating in the sales meeting, to decide whether Hoffman has shown that it is either "a lie" or "phony." *Russell,* 51 F.3d at 68. Again, we are not looking for poor business judgment. *See Bahl v. Royal Indemnity Co.,* 115 F.3d 1283, 1291 (7th Cir.1997). We are asking whether MCA honestly believes its own reason for firing Hoffman.

---

**1.** The parties never agreed on the fourth element of the prima facie case. We need not dwell on this point because the parties do agree that Hoffman has made out a prima facie case.

The parties agree that the June 1994 sales meeting deserves special scrutiny, as it was the final event in the litany of disruptive conduct that MCA recites. The parties also agree about what happened at the sales meeting and afterwards. As we described, the sales meeting was the finale to a workshop designed to motivate the sales force. Towards the end of the last day, Schwab asked whether anyone present had anything to say to further the sales effort. Hoffman responded, "Does management feel we are doing a good job covering the various broadcast groups?" Hoffman's Resp. to MCA's Local Rule 12(M) Statement Exh. H. Kraus jumped up and said, "That's an indictment of management." Hoffman Dep. at 403. Schwab testified in his deposition that he did not say so at the meeting, but he agreed with Kraus. Hoffman knew he had upset Schwab. He wrote a letter to Schwab acknowledging that his statement had caused some animosity. He also asked Schwab to respond if he felt negatively about the incident.

What Hoffman challenges is the reasonableness of Schwab's reaction to his comment. Hoffman continues to assert that his comment was benign, he did not intend to make waves, and Schwab was wrong to interpret it otherwise. Quite clearly, however, our job is not to judge the sensibilities of decision makers or to ask whether their decisions make good business sense. See Bahl, 115 F.3d at 1291. All we ask is whether the decision maker honestly relied on the proffered reason for firing the employee. See id. In light of the fact that Hoffman himself acknowledged that his question upset Schwab, we cannot say that Hoffman has shown this reason to be pretextual.

Hoffman also tries to show pretext by arguing that he was not treated the same as other, younger sales representatives in his office. He points to various facts to support this: Kraus did not use confidential memoranda to document problems with other sales representatives; Kraus personally traveled to Rockford to smooth over a relationship between a younger sales representative and a station manager; some sales representatives received written warnings about their performance before they were disciplined; and other sales representatives were put on probation before they were fired. Assuming all this is true for purposes of summary judgment, it does not lead to the conclusion that MCA is lying about the reason for firing Hoffman. These other events all related to lower-level employees at MCA. Hoffman was a Vice President and Regional Manager. MCA could reasonably expect a higher level of professionalism from Hoffman with less need for supervision than it could expect from less experienced and lower-ranking sales representatives. See Denisi v. Dominick's Finer Foods, Inc., 99 F.3d 860, 867 (7th Cir.1996) (refusing to find pretext based on different treatment of younger employees when younger employees were not similarly situated). We cannot say that MCA's different treatment of less experienced and lower-ranking sales representatives means that MCA's proffered reason for firing Hoffman is pretextual.

Next, Hoffman directs us to the same age-related comments that we considered and rejected as direct proof of discrimination. Hoffman is correct that sometimes remarks not directly related to the employment decision can be probative of discriminatory intent even when they do not constitute direct evidence of discrimination. See Huff v. UARCO, Inc., 122 F.3d 374, 385 (7th Cir.1997). Standing alone, however, these statements are insufficient to establish pretext. See id. We reject the statements here for substantially the same reasons as given above for rejecting them as direct proof of discrimination. Even excluding the fact that the statements do not relate to the employment decision, they do not give rise to an inference of age animus. The comments like, "you're getting old" were social banter, nothing more. The comment about getting "fresh legs" in Chicago was very vague, and the comment referring to another employee as an "old-fashioned hack salesman" did not, by Hoffman's admission, refer to age. As a collective, the comments do not establish that MCA is lying about its reason to fire Hoffman.

Finally, Hoffman disputes the underlying factual bases for several of the events in the "on-going problem with disruptive behavior" that MCA relies on as part of the reason for firing Hoffman. None of these factual dis-

putes suggests that MCA's reason to fire Hoffman was pretextual. *See Denisi*, 99 F.3d at 867. In fact, Hoffman admits that station managers complained about him and that his behavior at the June 1994 meeting offended Schwab. Small factual disputes about the underlying events that made up the ongoing problem could only create the "metaphysical" kind of doubt that the Supreme Court decried in *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. Hoffman has not shown that MCA did not honestly fire him for his disruptive behavior culminating in the June 1994 sales meeting. Summary judgment is proper for MCA. *See also Denisi*, 99 F.3d at 866 n. 7 ("Despite Mr. Denisi's [attempt to create factual issues], it remains uncontroverted that [the employer] had ample grounds to find his performance substandard.... [The employer] had sufficient evidence of poor performance ... to justify its discharge.").

For the foregoing reasons, we AFFIRM the district court's decision to grant summary judgment to MCA.