**Donald FISHER, Plaintiff,**

v.

**ILLINOIS DEPARTMENT
OF CORRECTIONS,
Defendant.**

No. 98 C 707.

United States District Court,
N.D. Illinois,
Eastern Division.

March 5, 1999.

Harold E. Collins, Michael Raymond Collins, George K. Katsoudas, Collins & Collins, Chicago, IL, for Donald Fisher, plaintiff.

Paul J. Ciastko, Sean F. Taylor, Illinois Attorney General's Office, Chicago, IL, for Illinois Department of Corrections, defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Donald Fisher sued his former employer, the Illinois Department of Corrections, alleging that he was denied a promotion because of his age and race, in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA). The Department moved for summary judgment on both claims. For the reasons set forth below, we deny the motion.

### I. Background

■ The briefing on this motion can best be described as "a mess." We will not cite all of the deficiencies here, but worst of all the Department—in a reply filed 19 days after an already substantially extended due date—completely failed to respond to or raise any evidentiary objections to Fisher's statement of additional material facts requiring the denial of summary judgment. Time and again, the judges of this Court have strictly enforced our Local Rules, *e.g., Crawford v. Bank of Am.*, 181 F.R.D. 363, 364 (N.D.Ill.1998) (Aspen, C.J.); *McGuire v. United Parcel Service*, 152 F.3d 673, 674 (7th Cir.1998), which deem admitted all of the facts set forth in the plaintiff's statement of additional facts which are not properly controverted by the other party's response. We do so again today. Not only will these facts will be deemed admitted for purposes of this motion, but they will continue to be so considered for the duration of the case, including the trial. *See Dawson v. New York Life Ins. Co.*, 932 F.Supp. 1509, 1513 (N.D.Ill.1996) ("All uncontested statements of fact in either party's statement ... are also deemed as being without substantial controversy for purposes of Rule 56(d) and shall be deemed as established for purposes of trial").[1] What follows, therefore,

---

1. We expect more professional advocacy from Assistant Illinois Attorneys General, who have repeatedly disappointed both this Court and the Seventh Circuit Court of Appeals. *See, e.g., Carr v. O'Leary*, 167 F.3d 1124, 1128 (7th Cir.1999) (threatening Illinois Attorney General's office with sanctions in light of its inadequate representation and citing Seventh Circuit's repeated criticisms of that office).

is a recitation of the facts as we can best discern them, looking at the evidence presented in the light most favorable to the plaintiff as we must on a motion for summary judgment.

Donald Fisher, a caucasian male, began working as Youth Supervisor for the Illinois Department of Corrections at the Joliet Youth Center in 1968, when he was 24 years old. In 1986, when he was 42 years old, he was promoted to the position of Youth Supervisor at Level III (YS–III). In the summer of 1995, when Fisher was 51, he heard of an opening for a Level IV (YS–IV) supervisor and applied for the promotion. When the YS–IV interview schedule was posted, Fisher's immediate supervisor, Chief of Security Robert Catchings, told Fisher in front of his coworkers that Fisher would not be promoted because Fisher was retiring, by which Catchings meant that Fisher was too old to be promoted. Fisher had no intention of retiring, however, nor had he ever announced any such plans to Catchings or to anyone else. After the interviews, the promotion was given to Robert Powell, a younger (45–year old) African–American male.

More YS–IV openings followed, and Fisher applied and interviewed again. He took the "Official Competitive Promotional Examination" in August of 1996 and received a grade of "A," indicating that he was "well qualified" for the YS–IV position. He was asked to serve as a temporary YS–IV on a number of occasions, and he did so for at least 83 days from August of 1995 through January of 1997. Whenever Fisher asked Catchings whether he would be promoted, however, Catchings told him, "No, you're going to be retiring."

The second position went to Deborah McDonald, another younger (46–year old) African–American female. After Fisher's third application and interview, he was denied the promotion in favor of Mario Shumpert, a third younger (49–year old) African–American applicant. Fisher applied a fourth time but then declined to interview and withdrew his application, At that time, all of the YS–IV supervisors were African–Americans.

According to the Department of Corrections, Fisher was never promoted because someone else always received a higher interview score than he did. The Department claims that the interviews were conducted and the scores computed according to the "Rutan" method of evaluation.[2] According to James Mitchell, Superintendent of the Joliet Youth Center since 1991:

> Rutan is an interviewing format using objective criteria to evaluate candidates. The criteria vary for each person. The reason for using this method is to ensure that the best candidate is chosen for each position. Mr. Whitaker [who scored the interviews of each candidate] is trained in the methods of Rutan scoring.

Mitchell, who was the decision maker for the YS–IV promotions, went on to describe the procedure followed in the case of the YS–IV applicants: "All candidates were given the same set of questions. Each candidate was given a numerical score based on answers to the standard questions."

While Mitchell made the final promotion decisions, the interviews were conducted by Robert Catchings, Fisher's immediate supervisor, and Donnie Whitaker, the Assistant Superintendent, who was responsi-

---

**2.** Apparently many Illinois state agencies have a handbook entitled "Interview and Selection Criteria and Techniques," which was "initially developed in an effort to avoid discrimination based on political affiliation ... [and] is largely a tool to aid state agencies to create their own procedures and practices for interviews and hiring." *Villarias v. State of Illinois*, No. 92 C 8420, 1995 WL 480897, at *6 n. 4 (N.D.Ill. Aug.8, 1995). We suspect that this handbook, called the "Rutan manual," was created in reaction to the Supreme Court's decision in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), although the defendant does not mention any such manual in its filings to this Court.

ble for scoring the candidates' answers. The YS–IV interview questionnaires list questions grouped into three categories: "Knowledge, Experience, and Leadership"; "Education, Training and Skills"; and "Motivation and Initiative." The completed questionnaires for each candidate do not reveal any explanation for the scoring, as there are no comments written in the spaces provided under each set of questions. They simply show numerical scores for each candidate in the spaces for "points," as well as a total score for each candidate, which is supposed to be the sum of the scaled scores, converted according to each category's percentage weight.

Mitchell also stated that "[i]n addition, the candidate's time usage, disciplinary records and performance evaluations were reviewed." We know the following about the records of Fisher and the employees who were promoted. Fisher was never charged with any wrongdoing and had never been suspended. However, the Department reprimanded Robert Powell shortly before his promotion for an inadequate search of a youth and for failing to respond to the charge. After finding Powell guilty of using excessive force on a youth, aggravated battery, filing a false/distorted report, and conduct unbecoming of a State employee, the Department suspended him for 10 days. About seven months before Mario Shumpert was promoted, the Department reprimanded him for failure to adhere to security practices. Just five days before Shumpert's interview, he was "written up" again for failing to do the work necessary in order for employees to receive their overtime pay. Shortly thereafter, the Department recommended that he be suspended for three days because of an earlier incident in which he failed to adhere to security practices and to supervise a youth.

Fisher also had more experience acting as a temporary YS–IV than did Robert Powell, and it was Fisher who trained Mario Shumpert in the YS–IV position. In addition, Fisher had seniority over each candidate promoted. Under the Collective Bargaining Agreement between Fisher's union and the Department, seniority is to be the controlling factor when candidates' ability and qualifications to perform the desired job are relatively equal.

Fisher was told by Mitchell that he was a good candidate but was not promoted simply because the Department had found someone better, and he was encouraged to keep applying. Fisher found a letter, however, which led him to believe otherwise. The letter, addressed to a union official and signed by Janet Richmond, the Department's Affirmative Action Coordinator, stated that the Department did not want to promote Fisher because they wanted a younger, black male for the position.

Fisher was humiliated. His co-workers started calling him "crazy old Indian" and told him to "go home, you're too old to be here." He was subjected to jokes and ridicule about his not getting the YS–IV job after interviewing three times for it. In December, 1997, Fisher complained about not being promoted, and Shumpert pushed him into a door and told him to leave the building. Fisher became depressed, sought treatment from a doctor who prescribed medication, and underwent psychological counseling. He ended up retiring on January 1, 1998.

## II. Discussion

Fisher first claims that the Department denied him the YS–IV promotion in violation of the ADEA, which makes it unlawful for an employer to discharge or otherwise discriminate against a person "because of such individual's age." 29 U.S.C. § 623(a). Fisher can establish that he would have been promoted "but for" the Department's age discrimination in either of two ways. He may point to direct evidence that age was the determining factor in his promotion denial, or he may use the indirect, burden-shifting method of proof established for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted by the Seventh Circuit for

use in age discrimination claims under the ADEA. *See Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 396 (7th Cir. 1997).

■ To prevail under the direct method of proof, Fisher must present evidence "relate[d] to the motivation of the decision maker responsible for the contested decision," *id.* (quoting *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 203 (7th Cir.1996)), that "the trier of fact can interpret as an acknowledgment of ... discriminatory intent" on the part of the employer or its agents. *Id.* Direct evidence is that "which if believed by the trier of fact will prove the particular fact in question without reliance on inference or presumption." *Cowan v. Prudential Ins. Co. of Am.,* 141 F.3d 751, 760 (7th Cir.1998) (citations omitted).

■ Fisher claims that Catchings's remarks constitute direct proof of discriminatory intent. The Department admitted, by failing to respond, that when the first interview schedule was posted, Catchings told Fisher that he would not get the promotion because he was retiring and that each time thereafter that Fisher asked Catchings whether he would be promoted, Catchings responded "No, you're going to be retiring." While the statement "you're going to be retiring" might be unclear absent further explanation, the Department admitted, again by failing to respond, that Catchings meant that Fisher was too old for the promotion.[3] This is direct evidence of discrimination. *See Hoffman v. MCA, Inc.,* 144 F.3d 1117, 1122 (7th Cir.1998) (supervisor's remark, "you're getting old," made several times to plaintiff in social setting, amounted to no more than common conversational jabs, but "[c]ertainly the case would be different

if these comments were in response to the question ... 'why was X promoted instead of me?' ").

Fisher must, of course, show that the comments were made by the decision maker in order for them to be *relevant* direct evidence, *see Stopka v. Alliance of Am. Insurers,* 141 F.3d 681, 688 (7th Cir.1998), and Catchings did not make the final promotion decision. However, an ADEA plaintiff may also prevail by showing "that the attitudes of the person who made the remarks tainted the decision maker's judgment." *Hoffman,* 144 F.3d at 1122. In *Hoffman,* the Seventh Circuit found it sufficient that the plaintiff put forth evidence that the person who made the allegedly discriminatory remarks was the plaintiff's supervisor and had written a series of memoranda to the decision maker about the plaintiff's performance. *Id.* The *Hoffman* Court found it appropriate in the summary judgment context to "assume that any discriminatory intent on [the supervisor's] part tainted [the decision maker's] decision, making [the supervisor's] remarks relevant to proving that ... [the employment] decision was unlawful." *Id.*

■ In this case, Mitchell stated in an affidavit that Whitaker scored the interviews and that Catchings had no input in the final promotion decision. Fisher presented evidence to counter this, however, explaining that Catchings was his immediate supervisor, was present at Fisher's interviews, and actively participated by asking Fisher interview questions. Looking at the evidence in the light most favorable to Fisher, a reasonable jury could find that Catchings had some input with respect to the scoring of Fisher's interview answers, on which Mitchell relied heavi-

---

**3.** While the Department did not reply to Fisher's allegation that this is what Catchings meant, it did allege in its 12M statement that Fisher understood Catchings's comments to be merely ambiguous jokes, citing to Fisher's own deposition testimony. When asked what types of remarks Catchings made to him, Fisher qualified his answer by saying: *"I*

*didn't know* if he was joking." Dep. Tr. of Donald Fisher at 39 (emphasis added). In light of the inconclusive nature of Fisher's testimony, and because of the Department's later admission, this issue is genuinely disputed, so we construe it in Fisher's favor for purposes of this motion.

ly—if not exclusively—in deciding not to promote Fisher. While it is possible that Catchings's discriminatory attitude did not taint the interview scores and therefore had no influence on Mitchell's decision not to promote Fisher, that determination should be left to the finder of fact. For that reason summary judgment on the age discrimination claim is inappropriate.

Fisher also claims that he was not promoted because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. As with his claim of age discrimination, Fisher can establish race discrimination either by presenting direct evidence that his promotion denial was racially motivated, or indirectly, under the *McDonnell Douglas* burden-shifting method, by presenting evidence from which it can be logically inferred that the adverse action was based on a legally forbidden ground. *See Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir.1996). As direct evidence of race discrimination, Fisher points to the letter that he saw from the Department's Affirmative Action Coordinator, which said that the Department did not want to promote Fisher because they wanted a younger, black male for the position. The statement in the letter unambiguously expresses a discriminatory intent, and it is clearly connected to the employment decision in question.

While "[s]tatements by a non-decision-maker that amount to mere speculation as to the thoughts of the decision-maker are irrelevant to our inquiry," *Chiaramonte*, 129 F.3d at 397, the Seventh Circuit has also recognized that "[t]here may be cases where an employee who is outside the chain of decision nevertheless has valuable information bearing on the charge of discrimination." *Fortino v. Quasar Co.*, 950 F.2d 389, 396 (7th Cir. 1991). The fact that the letter was written by the Department's Affirmative Action Coordinator suggests that age and race played at least some role in the Department's assessment of its employees, and it could be construed as an interpretation of the Department's official goal to promote only younger, black employees. *See Robinson*, 23 F.3d at 1165. Although the Affirmative Action Coordinator's role in the promotion process is not clear from the record before us, we must resolve this ambiguity against the movant and assume that remarks made by the Affirmative Action Coordinator about the decision in question is probative of the Department's hiring practices. Affirmative Action Coordinators are more likely than other low-level employees to have an influence over personnel decisions, or at least to have knowledge regarding the decision maker's objectives. Because this evidence raises a genuine issue for trial regarding the motives behind Department's decision not to promote Fisher, we deny the defendant's motion for summary judgment on the race discrimination claim.

Finally, Fisher argues that the Department's discrimination against him and the resulting harassment he experienced at work forced him into early retirement on January 1, 1998, constituting a constructive discharge in violation of Title VII. The Department's motion for summary judgment does not address the constructive discharge claim at all, probably because there is no mention in Fisher's complaint of the claim or the fact that Fisher quit his job. He raises it for the first time in his 12N statement and response to the motion for summary judgment, so the Department's reply brief, which merely rests on its original brief, is particularly unhelpful here. We will evaluate the constructive discharge claim based on the facts deemed admitted, however, since it is within our discretion to consider it a constructive amendment to the pleadings, and the Department has waived its right to object. In addition, the claim is so closely related to Fisher's original claims that we do not think allowing the amendment will prejudice the Department in any way. *See* FED.R.CIV.P. 15(b); *Walton v. Jennings Community Hosp., Inc.*, 875 F.2d 1317 (7th Cir.1989) (Rule 15(b) "allows great

latitude in amending complaints to conform with subsequent changes as the case develops.... The pleadings may be amended over the objection of another party, unless the objecting party can show that the introduction of evidence pertinent to issues not introduced in the pleadings would in some way prejudice his or her case").

 To prove that he was forced out or "constructively discharged" by the Department, Fisher must show "that: (1) the conditions at work were so intolerable that a reasonable person would have been compelled to resign; and (2) the working conditions [were] intolerable in a discriminatory way." *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 377 (7th Cir.1998). While the Seventh Circuit has held that " 'a simple discriminatory denial of promotion that cannot be reasonably construed as a career-ending action' " "cannot alone" " 'create such embarrassment or humiliation that the denial comprises a constructive discharge,' " *Lindale v. Tokheim Corp.*, 145 F.3d 953, 956 (7th Cir. 1998) (quoting *Jurgens v. EEOC*, 903 F.2d 386, 392 (5th Cir.1990)), here we have repeated promotion denials followed by co-workers' teasing Fisher about his age and his inability to get a promotion, Fisher's co-workers repeatedly called him a "crazy old Indian" and told him to "go home, you're too old to be here." When he complained in December 1997 about not being promoted, Mario Shumpert pushed him into a door and told him to leave the building. This caused him to become depressed, so he sought medical help, was prescribed medication, and underwent psychological counseling. He claims that his continued employment at the Department became intolerable. We find it doubtful that a jury would conclude that the hostility Fisher experienced was "beyond 'ordinary' discrimination" and was so unbearable that "quitting was the only way [he] could extricate [himself] from the intolerable conditions," *Sweeney v. West*, 149 F.3d 550, 558 (7th Cir.1998) (citations omitted), but because that conclusion is not precluded by the evidence and depends on a the jury's assessment of Fisher's credibility, we deny summary judgment on the constructive discharge claim as well.

### III. Conclusion

For the foregoing reasons, we deny the defendant's motion for summary judgment. It is so ordered.