**Dwight RICKGAUER, Plaintiff,**

v.

**MARTIN MARIETTA MATERIALS, INC., a Foreign Corporation, Defendant.**

No. 97–3275.

United States District Court, C.D. Illinois, Springfield Division.

July 8, 1999.

---

the mining industry or mining related field since he was 15 years of age. In 1988, Rickgauer began working as the plant manager of the Pana ' Rock Quarry in Pana, Illinois. At that time, Standard Slag owned the Pana rock quarry. Subsequently, Standard Slag sold the quarry to La-Farge Corporation, d/b/a Standard La-Farge. Rickgauer remained as the plant manager after the acquisition by LaFarge Corporation. On January 1, 1994, Defendant Martin Marietta Materials, Inc., ("Martin Marietta") purchased the Pana rock quarry and hired Rickgauer to be its plant manager. At the time, Rickgauer was 61 years old.

Initially, Rickgauer reported to James Gregory (D/O/B 4/9/56) who was the area production manager in Martin Marietta's Indiana district, i.e., the district in which the Pana rock quarry was located. For most of 1994, Rickgauer reported directly to Dean Hardy (D/O/B 7/21/50) who was the general manager of the Indiana district. Finally, Martin Marietta hired Earl Smith (D/O/B 12/1/38) as the area production manager in the Indiana district, and he supervised Rickgauer until Rickgauer was terminated.

Prior to Martin Marietta's purchase of the quarry, Rickgauer's responsibilities included labor relations, budget planning, sales strategy, drilling, blasting, landowner relations, land acquisitions, and equipment maintenance. After Martin Marietta's purchase, the employee relations department assumed the responsibility for negotiating the labor contracts. It did so as part of a company-wide policy of centralizing control of labor relations and collective bargaining. In addition, as part of a company-wide policy, Martin Marietta's district general manager assumed the responsibilities for land acquisition, negotiating with neighboring landowners, and handling zoning issues with the appropriate unit of local government, all tasks which were previously performed by Rickgauer.

Garry W. Bryan, Clinton, IL, for plaintiff.

R. Mark Mifflin, David A. Herman, Springfield, IL, Eric F. Mennel, Stephen D. Erf, Chicago, IL, for defendant.

## OPINION

RICHARD MILLS, District Judge.

Martin Marietta hired Rickgauer to be its plant manager when he was 61 years old.

Two and a half years later, he was terminated.

Rickgauer claims that Martin Marietta fired him because of his age.

However, the Court believes that the true reason for Rickgauer's discharge was the fact that he referred to his superiors as "idiots" and "stupid."

Martin Marietta's motion for summary judgment is allowed.

## I. BACKGROUND

Plaintiff Dwight Rickgauer was born on September 16, 1932. He has worked in

In December 1994, Rickgauer received his first performance evaluation from Martin Marietta. In that evaluation, Martin Marietta commended Rickgauer for his efforts to understand and implement its policies and procedures. Rickgauer received an excellent rating in the category of organizing his work and received no rating less than satisfactory. His appraisal summary indicated that his performance level was meeting Martin Marietta's expectations.

However, Martin Marietta did have some criticism of Rickgauer. For example, shortly after the acquisition, Gregory instructed Rickgauer to submit his expenses for reimbursement on a weekly, rather than a monthly, basis. Rickgauer balked at this instruction and, at first, did not comply. Moreover, on one of Hardy's first visits to the Pana quarry, he instructed Rickgauer to remove a cartoon which contained a racial slur from the office bulletin board and instructed Rickgauer and other employees to remove pictures of nude women from the office walls and from the cabs of heavy equipment.

Rickgauer had also refused to comply with Hardy's request that he write a letter of apology to Mrs. John Klein, a relative of one of the quarry's landowners, after he had hung up the telephone on her. Finally, Hardy noted that Rickgauer had a bad attitude towards Martin Marietta. Specifically, Hardy noted that Rickgauer referred to company officials in Raleigh, North Carolina, as "idiots."

In January 1995, Earl Smith became an area production manager of the Indiana district and Rickgauer's supervisor. Sometime that month, Smith and Rickgauer had a disagreement regarding repairs to a front-end loader. Rickgauer admitted that there was a conflict between Smith and him and asserted that the conflict was based upon Smith's lack of knowledge and ability to run a rock quarry profitably. Rickgauer believed that Smith resented him because he knew how to run a rock quarry profitably. In fact, Rickgauer went so far as to tell Smith that he did not have much respect for his ability because Smith did not have any ability.

During a February 1995 visit, Smith reviewed with Rickgauer Martin Marietta's goals and objectives for the upcoming year. At this meeting, Smith informed Rickgauer that his attitude toward the company's goals and policies was not acceptable. For example, Rickgauer was frequently critical of Smith in the presence of subordinate employees such as the office manager, Regina Inman, and the lead person, Terry Engleman. In fact, Rickgauer on more than one occasion referred to Smith or to Smith's job performance as "stupid." Rickgauer also criticized Martin Marietta's policies and procedures in the presence of subordinate employees.

In addition to his attitude problem, Martin Marietta criticized Rickgauer for submitting reimbursement requests for personal expenses [1]. Smith also criticized Rickgauer for submitting an unapproved reimbursement request for pens which he had purchased to be used as promotional items. Accordingly, in the middle of 1995, Smith told Rickgauer that his performance must improve.

That same year Martin Marietta's safety manager Christopher Bryan visited the Pana facility. Bryan sent a memorandum to Rickgauer following his visit which listed a number of safety issues which he instructed Rickgauer to correct. In his December 1995 performance evaluation, Hardy and Smith rated Rickgauer's performance as "Expected Minus" and wrote that in the coming year, he would be challenged to develop a more cooperative attitude. Due to these performance issues,

1. On one occasion, Rickgauer traveled to Springfield, Illinois, for Martin Marietta business and then proceeded on to Jacksonville, Illinois, for personal business: Rickgauer submitted a reimbursement request for the entire trip. On another occasion, Rickgauer submitted his wife's expenses for reimbursement which she incurred when she accompanied him on a business trip to Carmel, Indiana.

Hardy informed Rickgauer that he would review his performance again in six months.

In the spring of 1996, Hardy transferred to North Carolina, and Robert Furlong assumed the position of general manager. In May of that year, Furlong met with Smith and Rickgauer, and Furlong reminded Rickgauer that he had been given numerous warnings about his attitude towards safety, environmental issues, and Martin Marietta's policies and procedures. Furlong told Rickgauer that it was time for him to either show significant improvements or be terminated.

In the summer of 1996, Furlong instituted a staff meeting program to facilitate communication between the operations people at the plant and the plant's sales representatives. Mark DeGrave, an area production manager, conducted the first staff meeting and expected Rickgauer to conduct the subsequent meetings. However, Rickgauer believed that the staff meetings were a waste of time and were a silly idea. At the September 20, 1996, staff meeting, Rickgauer was critical of Martin Marietta's policies and procedures in the presence of his subordinates. Voices were raised during a confrontation between Rickgauer and DeGrave regarding Martin Marietta's accounting practices and procedures. Inman, Jack Dorfmeyer,[2] and Engleman, who were in attendance at the meeting, testified that they believed that Rickgauer had acted disrespectfully and insubordinately toward DeGrave.

Upon returning to Indianapolis, DeGrave told Furlong that Rickgauer had been argumentative and had called Martin Marietta's accounting practices "stupid." Furlong instructed DeGrave to prepare a memorandum regarding the September 20 meeting. Furlong, in turn, contacted Jonathan Stewart, Martin Marietta's Vice President of Human Resources, regarding the confrontation between DeGrave and Rickgauer. Furlong informed Stewart that Rickgauer had been counseled in the

past, yet he still exhibited an attitude problem towards Martin Marietta. Accordingly, Furlong recommended that Rickgauer be discharged. Steward agreed, and on September 24, 1996, Furlong terminated Rickgauer's employment with Martin Marietta.

After terminating Rickgauer, Martin Marietta replaced him with Kenneth Chavis (D/O/B 1/15/40) on an acting basis. Thereafter, Furlong offered Chavis the Pana plant manager position on a permanent basis, but he declined for personal reasons. Therefore, Furlong offered the position to Matt Konjevich (D/O/B 2/21/70). Konjevich became the Pana plant manager on a permanent basis in June 1997.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c); *see Ruiz–Rivera v. Moyer,* 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90

---

**2.** Dorfmeyer was the Pana plant's sales representative.

S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987).

## III. ANALYSIS

■ Rickgauer argues that Martin Marietta terminated his employment because of his age in violation of the Age Discrimination in Employment Act ("ADEA"). 29 U.S.C. § 621 *et seq.* In order for Rickgauer to establish that Martin Marietta violated the ADEA, he must show that his age was a determining factor in Martin Marietta's decision to fire him. *Wolf v. Buss (America), Inc.,* 77 F.3d 914, 919 (7th Cir.1996); *Smith v. Great Am. Restaurants, Inc.,* 969 F.2d 430, 434 (7th Cir.1992). Rickgauer need not prove that his age was the sole reason for Martin Marietta's decision; rather, he need only to show that "but for" Martin Marietta's motive to discriminate against him based upon his age, he would not have been subjected to an adverse employment action. *Wolf,* 77 F.3d at 919; *La Montagne v. Am. Convenience Prods., Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984). Rickgauer

> may prove age discrimination in one of two different ways. [H]e may try to meet h[is] burden head on by presenting direct or circumstantial evidence that age was the determining factor in h[is] discharge. Or, as is more common, [ ]he may utilize the indirect, burden-shifting method of proof for Title VII cases originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and later adapted to age discrimination claims under the ADEA.

*Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994) (citations and quotations omitted); *Anderson v. Stauffer Chem. Co.,* 965 F.2d 397, 400 (7th Cir.1992).

## A. DIRECT EVIDENCE METHOD

■ "To prove age discrimination using direct evidence, an ADEA plaintiff must establish 'that he would not have been discharged "but for" his employer's motive to discriminate against him because of his age.'" *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere,* 83 F.3d 833, 840 (7th Cir.1996), quoting *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); *Anderson,* 965 F.2d at 400. To prove the required "but for" causation, Rickgauer may rely upon any of the following four types of evidence:

1) direct evidence that age was a determining factor, such as discriminatory statements uttered by the employer's decision-maker.

2) circumstantial evidence that age was a determining factor, such as a statistical imbalance in the employer's workforce.

3) direct evidence that the employer's proffered justification is pretextual, such as a contradiction between the employer's proffered justification at trial and documentary evidence from the time of the decision.

4) circumstantial evidence that the employer's proffered justification is pretextual, such as evidence that the proffered justification is not a genuine job requirement.

*Giacoletto v. Amax Zinc Co., Inc.,* 954 F.2d 424, 425–26 (7th Cir.1992); *Perfetti v. First Nat'l Bank of Chicago,* 950 F.2d 449, 450–51 (7th Cir.1991).

■ In the instant case, Rickgauer relies upon the first type of evidence. Specifically, Rickgauer asserts that Hardy's calling his methods of dealing with landowners "old fashioned" constitutes direct evidence of discrimination because the comment was clearly related to an element of his employment responsibilities. In addition, Rickgauer argues that the fact that Martin Marietta reduced his job responsibilities, thereby reducing his autonomy,

and its reluctance to accept his input reveal an age based animus by the company and its decision makers against him. Finally, Rickgauer alleges that age animus is evidenced in the misrepresentations which he received regarding his pension benefits.

The United States Court of Appeals for the Seventh Circuit has held that use of the term "old-fashioned" relates to style, not age and, therefore, does not constitute direct evidence of age discrimination and is not probative of an intent to discriminate based upon age. *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1122 (7th Cir.1998). Thus, Hardy's use of that term "old-fashioned" does not constitute direct evidence of age discrimination.

Furthermore, Rickgauer has offered no evidence to support his assertion that Hardy's comment tainted Furlong's and Stewart's decision to fire him. In order for statements to constitute direct evidence of discrimination, Rickgauer must show that Hardy's remarks were related to the decision to fire him. *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir.1996); *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686–87 (7th Cir.1991). "If such proof is lacking, the remarks alone will not give rise to an inference of discrimination even when uttered by the ultimate decisionmaker." *Fuka*, 82 F.3d at 1403; *Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1266 (7th Cir.1993). Statements made by non-decision makers are irrelevant under the direct evidence method unless the plaintiff presents evidence that the non-decision maker's statement tainted the employment decision. *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 546 (7th Cir.1997); *see Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1155 (7th Cir.1989) (noting that actions and comments by employees not involved in a discharge decision cannot provide a basis for a determination of discrimination); *see also O'Connor v. DePaul Univ.*, 123 F.3d 665, 671–72 (7th Cir.1997) (holding that stray remarks cannot serve as direct evidence of discriminatory intent with respect to employment actions).

Here, Furlong and Stewart made the decision to terminate Rickgauer. Hardy took no part in the decision, and in fact, he was in Raleigh, North Carolina, and had been there for four months when the decision was made. Rickgauer's subjective belief that Hardy's statement may have tainted the decision to fire him is insufficient to create a genuine issue of material fact precluding summary judgment. *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir.1989) (holding that "subjective beliefs of the plaintiff . . . are insufficient to create a genuine issue of material fact."). Otherwise, a plaintiff could through speculation create a material issue of fact and, thereby, negate summary judgment in discrimination cases. *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). Thus, the Court finds that Hardy's comment does not constitute direct evidence of age discrimination.

Finally, Rickgauer's complaints regarding his reduced responsibilities and pension benefits do not constitute direct evidence of age discrimination. Martin Marietta has offered evidence that it reduced Rickgauer's autonomy and job responsibilities pursuant to company-wide policies. These policies affected all plant managers, not just Rickgauer. Although Rickgauer asserts that he did not know of these policies, he has not denied nor offered any evidence to establish that these policies did not exist. As for Rickgauer's claims regarding his pension benefits, he has failed to establish that a triable issue of fact exists or that Martin Marietta had any knowledge regarding the representations made to him by the plan administrator. Accordingly, the Court finds that Rickgauer has failed to offer any direct evidence of age discrimination.

## B. INDIRECT EVIDENCE METHOD

Because Rickgauer has failed to offer any direct evidence of age discrimination,

he must rely upon the familiar burden-shifting method, set forth in *McDonnell Douglas*, to establish his *prima facie* case. "To establish a *prima facie* ADEA claim under *McDonnell Douglas*, [Rickgauer] must show that (1) he was more than forty years old; (2) he performed his job satisfactorily; (3) he suffered a materially adverse employment action; and (4) younger employees were treated more favorably." *Halloway v. Milwaukee County*, 180 F.3d 820, 825 (7th Cir.1999); *Crady v. Liberty Nat'l Bank and Trust Co. of Indiana*, 993 F.2d 132, 134 (7th Cir.1993).

Once an ADEA plaintiff has established a *prima facie* case, a rebuttable presumption of discrimination is created. *Wolf*, 77 F.3d at 919; *Oxman v. WLS–TV*, 846 F.2d 448, 453 (7th Cir.1988). "The burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for the employee's termination." *Wolf*, 77 F.3d at 919 (footnote omitted); *Weihaupt v. Am. Med. Ass'n*, 874 F.2d 419, 426 (7th Cir.1989). If the employer is able to overcome the presumption, the burden returns to the plaintiff to show by a preponderance of the evidence that the employer's reasons are pretextual. *Wolf*, 77 F.3d at 919; *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir.1993).

Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). The Seventh Circuit has stated that "[p]retext may be established directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Id.* If an ADEA plaintiff chooses to establish pretext indirectly, the plaintiff may do so "by introducing evidence that demonstrates that (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the discharge; or (3) the proffered reasons were insufficient to motivate the discharge." *Wolf*, 77 F.3d at 919; *Weihaupt*, 874 F.2d at 428.

Finally, an ADEA plaintiff may not simply show that the employer acted incorrectly; rather, the plaintiff must show that his employer did not believe the reasons it offered for firing him. *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992). The Court should "not sit as a super-personnel department that reexamines an entity's business decisions. The question is not whether the [employer] exercised prudent business judgment, but whether [the employer] has come forward to refute the articulated, legitimate reasons for his discharge." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986) (internal citations omitted); *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir.1997).

■ Although the Court recognizes that Rickgauer's burden of establishing the four elements of a *prima facie* case is not onerous but is generally "quite easy to meet", *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Kahn v. United States Secretary of Labor*, 64 F.3d 271, 277 (7th Cir.1995), the Court finds that Rickgauer has failed to establish the second and fourth elements of his *prima facie* case. Rickgauer has failed to establish the fourth element in that the individual who replaced him as the plant manager was not substantially younger than he was. The Seventh Circuit has noted that under the ADEA, the "disparity in age ... must be sufficient to create a reasonable inference of age discrimination." *Roper v. Peabody Coal Co.*, 47 F.3d 925, 927 (7th Cir. 1995).

Kenneth Chavis replaced Rickgauer as the Pana plant manager. Chavis' birthday is January 15, 1940, and he is only seven years younger than Rickgauer. In *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir.1997), the Seventh Circuit held that a ten year difference in ages would be presumptively "substantial." On the other hand, "a seven-year age difference is a presumptively insubstantial gap."

*Richter v. Hook–SupeRx, Inc.*, 142 F.3d 1024, 1029 (7th Cir.1998). Here, the gap is presumptively insubstantial, and Rickgauer has failed to offer evidence that Martin Marietta considered his age to be significant.

Rickgauer makes much of the fact that Chavis was only an "acting plant manager" and that Konjevich, whose birth date is February 2, 1970, was made the permanent plant manager. Because Konjevich became his permanent replacement, Rickgauer argues that Martin Marietta treated substantially younger employees more favorably than he was.

In addition, Rickgauer points to some examples of conduct for which he was criticized by Martin Marietta, but other younger employees were not criticized even though they engaged in the identical conduct. Specifically, Rickgauer points to the fact that he was criticized for failing to wear a hard hat and a safety belt when other younger employees also failed to wear this equipment but were not criticized. Rickgauer asserts that this evidence establishes indirect proof of age based animus against him.

However, in responding to Martin Marietta's statement of undisputed facts, Rickgauer admitted that Furlong offered the Pana plant manager position to Chavis on a permanent basis but that Chavis declined due to personal reasons. It is only after Chavis declined the permanent position (after functioning as the acting plant manager for six months) that Martin Marietta offered the position to Konjevich. Rickgauer has not offered any evidence or even asserted that Martin Marietta only offered the position to Chavis as a ruse knowing that he would decline the permanent position at which time it could offer the position to the younger Konjevich.

■ As for Rickgauer's argument regarding his failure to wear a hard hat and seat belts, his argument is inapposite. Martin Marietta has represented that it fired Rickgauer due to his insubordination and his bad attitude, not for his failure to comply with the company's safety standards. Rickgauer has not offered any evidence that any other employee, younger or older, engaged in the type of insubordination documented at the September 20, 1996, staff meeting or maintained a similar bad attitude toward the company and was not terminated. Accordingly, the Court finds that Rickgauer has failed to establish the fourth element of his *prima facie* case.

Furthermore, the Court does not believe that Rickgauer was satisfying Martin Marietta's legitimate employment expectations. Rickgauer points to his performance evaluations in which he received overall satisfactory ratings. Moreover, Rickgauer points to the fact that he was making improvements in his safety ratings and in other areas before his discharge. Thus, he argues that he was performing his job satisfactorily.

■ However, even if this were true, Martin Marietta has offered a legitimate, non-discriminatory reason for terminating Rickgauer, *i.e.*, his insubordination and bad attitude, and he has failed to show this tendered reason was a mere pretext for age discrimination against him. The Seventh Circuit has recognized that insubordinate activity towards a supervisor is a legitimate basis for discharging an employee. *Kirk v. Fed. Property Management Corp.*, 22 F.3d 135, 138–39 (7th Cir.1994). As documented above, Rickgauer had a history of displaying a bad attitude towards Martin Marietta. Rickgauer asserts that Martin Marietta resented his insights and suggestions because of his past experience in running a rock quarry.

However, Martin Marietta had no duty to adhere or even listen to Rickgauer's suggestions. As he concedes, Martin Marietta was entitled to run the Pana plant however it deemed fit. Rickgauer also concedes that there is evidence of his insubordination, but he asserts that rather than being insubordinate, he was merely offering constructive criticism. In this Court's opinion, however, referring to your

superiors as "stupid" and as "idiots," especially in the presence of lower-level employees, constituted a legitimate, non-discriminatory reason to terminate him, and Rickgauer has failed to establish that this tendered reason was a lie or was pretextual. *See Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 865 (7th Cir.1996) (holding that an ADEA plaintiff must offer more than his own perception of his performance in order to survive summary judgment).

Finally, the Court finds that Martin Marietta is entitled to summary judgment because Rickgauer has admitted that his attitude and insubordination, rather than his age, was the reason that Martin Marietta terminated him. In his response to Martin Marietta's statement of undisputed facts, Rickgauer admitted Martin Marietta's statement of undisputed fact number 175 which provides: "The history of Rickgauer's attitude and Rickgauer's insubordination led Furlong to feel that it was the proper time to terminate his employment." As such, Rickgauer has acknowledged that age was not a determining factor in his discharge, his attitude and insubordination were. *Wolf,* 77 F.3d at 919; *Smith,* 969 F.2d at 434.

Accordingly, the Court finds that there are no genuine issues of material fact to be decided by the trier of fact and that Martin Marietta is entitled to judgment as a matter of law.

*Ergo,* Defendant's Motion for Summary Judgment is ALLOWED. Pursuant to Federal Rule of Civil Procedure 56, summary judgment is hereby entered in favor of Defendant and against Plaintiff.